**Mark R. RILEY and Allyn P. Riley, Appellants,**

v.

**CAMPEAU HOMES (TEXAS), INC., Appellee.**

**No. C14-90-00507-CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 28, 1991.

Rehearing Denied April 18, 1991.

James A. Porter and Robert D. Topping, Houston, for appellants.

Robert S. MacIntyre, Jr. and Lori A. Swann, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

The material issue in this case is whether a lessee's right of first refusal on a leased condominium is triggered when the owner decides to sell that condominium as part of a package with other condominium units. The trial court granted partial summary judgment for the owner holding that appellants could not enforce their right of first refusal and purchase the condominium at the proposed sale price because it was included with other assets in a so-called "bulk" sale. We reverse and remand.

Appellants were assigned a lease on a condominium, Unit 1801 in Bayou Bend Towers, from the original tenant, BTI, Ltd. [hereinafter BTI], who had leased the premises from the original owner, Centeq Condominium, Ltd. [hereinafter Centeq]. The lease contained a right of first refusal for the tenant or its assignee to purchase the unit for the proposed price if it were offered for sale to a third party. Subsequently, Centeq conveyed the unit, along with other properties, to an affiliate of appellee Campeau Homes (Texas), Inc [hereinafter Campeau]. On June 25, 1989, appellee entered into a sales contract with Advocate Equities (U.S.) Inc., Trustee [hereinafter Advocate] for the sale of appellee's Houston assets including Unit 1801 and other condominiums in Bayou Bend Towers. The contract specified a fixed purchase price of $76.20 per square foot for Bayou Bend Towers.

On August 7, 1989, appellants received a letter, addressed to BTI, from appellee's counsel stating:

Campeau Homes (Texas), Inc. is the current Landlord under the referenced Lease. Pursuant to the terms of Section 31 of the Lease, please find enclosed a copy of a Contract of Sale, which affects

the Leased Premises, and has been entered into by Landlord.

Section 31, referred to in this letter, concerns only the lessee's right of first refusal in the event of a bona fide offer from a third party to purchase the leased premises and the landlord's intention to accept the offer. This section obligates the landlord to forward a copy of the proposed contract of sale to the tenant, which it did. It also provides that the tenant has the right to accept the terms of the contract within fifteen days and to purchase the premises on the price and terms specified in the contract. Appellants' counsel promptly notified appellee, through its counsel, that appellants were exercising their right of first refusal. Up to this point, everything progressed in accordance with the terms of the first refusal right in the lease contract. However, following this communication, which apparently was the first notice to Campeau that appellants, and not BTI, were the tenants, Campeau wrote to appellants on August 15, 1989, advising them that their unit was part of a larger sale of numerous properties and Campeau had no intention to sell it other than as part of the transaction with Advocate. Campeau further stated that they had requested Advocate to purchase the properties subject to any rights of first refusal and to honor appellant's first refusal rights to the condominium in the future if an offer is made solely for Unit 1801. In effect, they asked appellants to waive their right of first refusal for the current purchase. Otherwise, Campeau would "seek to exclude the Leased Premises from the sale. . . ."

Appellants responded by letter dated August 16, 1989, demanding that their right of first refusal be honored and deposited $5000.00 earnest money in accordance with a counterpart to Advocate's sales contract. Campeau refused their demand by letter of August 23, 1989, asserting that appellant's right of first refusal was not applicable to this sale because it was a "bulk" sale involving other properties. Campeau further advised appellants that their unit was being withdrawn from the proposed sale. The sale of the remaining 24 condominium units

to Advocate was closed on September 26, 1989.

On August 25, 1989, appellants filed suit against Campeau and Wayne E. Jones, an officer of Campeau, seeking damages for breach of contract and specific performance, malicious interference with business relations, civil conspiracy to defraud, breach of good faith and fair dealing, and defamation. On March 5, 1990, the trial court granted Campeau's motion for partial summary judgment ruling that the right of first refusal was not enforceable and dismissing appellants' specific performance claim. Following a severance, this appeal followed.

Section 31 of the lease, in pertinent part, provides:

It is expressly understood and agreed that if at any time during the term of this Lease or any renewal or extension thereof, *Landlord should receive a bona fide offer* from any person, persons, organization or organizations *to purchase in whole or in part, the Leased Premises,* the Landlord shall send Tenant a copy of the proposed Contract and notify Tenant of its intentions to accept the same. *Tenant shall have the right* within fifteen (15) days of receipt of the proposed Contact *to accept the terms of the Contract in writing* and within forty-five (45) days thereafter to purchase the above described property in its own name or in the name of a nominee, *for the gross purchase price and on the price and terms specified in said Contract.*

\*　\*　\*　\*　\*　\*

Should Landlord enter into an assignment, sale, transfer or conveyance in conflict with the Right of First Refusal, *Tenant may,* at its option, *in legal proceedings seek to have a court of competent jurisdiction declare this Agreement breached* and a decree and order that said assignment, sale, transfer, or conveyance is null, void, and of no effect. *Nothing contained herein shall be construed to prevent specific performance of this Right of First Refusal.* This Right of First Refusal shall in no way restrict or prohibit transfers by operation

of law or transfers between Landlord and Tenant or Tenant's nominee.

\*   \*   \*   \*   \*   \*

*This Right of First Refusal constitutes the entire agreement of the parties and can be modified only by written instrument signed by the parties hereto.* (emphasis added.)

Campeau argued to the trial court and to us on appeal that the sales contract with Advocate to sell a number of condominium units in a so-called "bulk transfer" manifested no intent to sell the burdened leased premises separately. In its memorandum opinion, the trial court stated that there was little Texas authority concerning the question of whether a right of first refusal on a given piece of property is triggered when that property is part of a proposed sale of a larger number of assets. The trial court also stated that "an examination of the first refusal clause in the lease in the case at bar does not reveal any contemplation of bulk transfers or inclusion of Unit 1801 in the sale of other condominium units as a triggering event for the right of first refusal." The trial court apparently based its reasoning on case law from other jurisdictions [1] and the theory that appellants would receive an unbargained for windfall if allowed to purchase the condominium at the agreed price for the package deal. Conversely, appellants argue that Campeau voiced no such concerns when it notified their assignor of the offer to sell the unit as part of a larger package and, regardless of the mode of the sale, the right of first refusal was triggered and they were entitled to purchase the unit at the fixed contract price communicated to them. Under the facts of this case, we agree with appellants and find that the reasoning in current Texas law is dispositive of the issue despite the fact that no Texas decisions have specifically addressed the issue in the context of group sales of condominium units.

In their first point of error, appellants argue that the trial court erred in granting partial summary judgment because there were genuine issues of material fact regarding numerous issues in the case. The standard of review for summary judgments is well established. Appellee, as the movant for summary judgment, has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). We must view all evidence favorable to the non-movant as true when deciding if there is a disputed material fact issue. *Id.* at 548–49. Every inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Id.* at 549.

Section 31 of this condominium lease gives appellants the right of first refusal on Unit 1801. A right of first refusal, as a preemptive right, requires the property owner to first *offer* the property to the person holding the right of first refusal at the stipulated price and terms in the event the owner decides to sell the property. *Holland v. Fleming*, 728 S.W.2d 820, 822 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Unlike an option contract, a right of first refusal does not give the lessee the power to compel an unwilling owner to sell. *Sanchez v. Dickinson*, 551 S.W.2d 481, 484 (Tex.Civ.App.—San Antonio 1977, no writ). An owner does not have to sell and, until the owner decides to sell, there is nothing to exercise and it is not possible to fix a certain purchase price. *Id.* at 485. However, once an owner decides to sell, there is an obligation to offer the holder of the right of first refusal the opportunity to buy the burdened property on the terms offered by a bona fide purchaser. *Id.* at 486. If the lessee declines to purchase the property, the owner may sell to anyone. *Henderson v. Nitschke*, 470 S.W.2d 410, 413 (Tex.Civ.App.—Eastland 1971, writ ref'd n.r.e.).

---

1. *See Shell Oil Co. v. Trailer & Truck Repair Co., Inc.*, 828 F.2d 205 (3d Cir.1987); *Manella v. Brown Co.*, 537 F.Supp. 1226 (D.Mass.1982); *Aden v. Estate of Hathaway*, 162 Colo. 311, 427 P.2d 333 (1967); *Gyurkey v. Babler*, 103 Idaho 663, 651 P.2d 928 (1982); *Myers v. Lovetinsky*, 189 N.W.2d 571 (Iowa 1971); *New Atlantic Garden, Inc. v. Atlantic Garden Realty Corp.*, 201 A.D. 404, 194 N.Y.S. 34 (1922); *Smith v. Traxler*, 228 S.C. 418, 90 S.E.2d 482 (1955).

On the other hand, by acquiring an option to purchase property, the holder of the option purchases the right to compel a sale of property on the stated terms before the expiration of the option. *Joe T. Garcia's Enterprises, Inc. v. Snadon*, 751 S.W.2d 914, 916 (Tex.App.—Dallas 1988, writ denied). Option contracts have two components: (1) an underlying contract that is not binding until accepted; and (2) a covenant to hold open to the optionee the opportunity to accept. *Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851, 853 (Tex.App.—Dallas 1983, writ ref'd n.r.e.).

A right of first refusal ripens into an option when the owner elects to sell. *Sanchez*, 551 S.W.2d at 484. When an owner is required to notify the holder of a right of first refusal of the owners election to sell, "the right matures into an enforceable option when the owner gives the required notice." *Holland*, 728 S.W.2d at 822–23. If no consideration has passed, the option is revocable during its term; however, once consideration passes, the option becomes irrevocable. *Hott*, 663 S.W.2d at 853–54. Generally, the consideration for the privilege of purchasing property under an option "is not separate from the consideration for the lease as a whole, and where the lease is sufficiently supported by a consideration the provision for the privilege of purchasing the property is adequately supported." *Henderson*, 470 S.W.2d at 414 (quoting 51C C.J.S. *Landlord & Tenant* § 88(2) (1968)). There is no evidence in the record that appellants' lease is no longer supported by consideration.

Here, appellee's contract with the third party to purchase the listed properties stated that Advocate agreed to purchase and appellee agreed to sell: *"All* of the residential condominium units ... owned by Seller as of the Closing Date ... located within ... the BAYOU BEND TOWERS, a condominium apartment project...."* (emphasis added.) It is undisputed that Unit 1801 is located in the Bayou Bend Towers. The sales contract required appellee to furnish Advocate with copies of "[a]ll pending contracts of sale or rights of first refusal or option contracts or contracts for deed concerning any Fee Unit." Thus, it appears Advocate was willing to include condominiums in the package burdened by a right to first refusal if, of course, such rights were not exercised by the tenants because of the immediate sale. Appellee, in accordance with the underlying lease requirements, forwarded a copy of the sales contract to BTI, the record lessee, that contained an offer by a bona fide purchaser at a stipulated price and informed appellants that the contract had been entered into by appellee. No mention was made in this notice that Section 31 did not apply to the proposed sale. Indeed, the opposite conclusion seems reasonably clear. If the right of first refusal was not implicated by the proposed sale, then why the notice referring to Section 31 with the sales contract attached? Appellants, upon receipt of this notice and offer, then invoked their right of first refusal within the fifteen-day option period as required by Section 31 of the lease agreement. Based on these facts, we find that an irrevocable option contract was formed between the parties at the time appellants received the notice of the Advocate sales terms subject only to the time and other constraints contained in Section 31.

A sale or transfer of property burdened by a right of first refusal without making an offer to the holder of the right is a breach of contract for which the remedy of specific performance is available. *Martin v. Lott*, 482 S.W.2d 917, 920 (Tex. Civ.App.—Dallas 1972, no writ). A party seeking specific performance of a contract for the sale of real property must only prove "that he is ready, willing and able to pay the agreed price for the property and perform the essence of the agreement and offer to do so." *Scott v. Vandor*, 671 S.W.2d 79, 86 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

In this case, appellee notified appellants of their right to exercise the right of first refusal. Appellants' subsequent actions of depositing escrow money and returning a sales contract, based on the terms of the third party's contract, to purchase Unit 1801 indicates that they were ready, will-

ing, and able to pay the agreed price for the property. Indeed, appellants' lease specifically grants the remedy of specific performance of the right of first refusal.

On the other hand, the lease contains no provision allowing for revocation of appellee's required offer. Nor does the Advocate sales contract provide for withdrawal of one of the condominium units by appellee if the tenant refuses to waive the right of first refusal. The only provision allowing appellee to withdraw a unit states:

> Seller, at Seller's option, may exclude from the Fee Units to be conveyed at the Closing (the "Excluded Units"), all or a portion of the Fee Units *that are under contract to be sold to third parties* (the "Third Party Contracts") *at the time of the Closing....* (emphasis added.)

There is nothing in the record to indicate that Unit 1801 was under contract for sale to any third party other than Advocate. Indeed, this clause could be construed to apply to holders of rights of first refusal or option contracts. We find that, under the record before us, the trial court erred in entering summary judgment. Appellee has not proved, as a matter of law, that appellants are not entitled to specific performance or recovery for an action on breach of contract, particularly where both remedies are specifically provided for in the lease between appellee and appellants. We sustain appellants' first point of error.

In their second point of error, appellants argue that the trial court misinterpreted the applicable law concerning the enforceability of a right to first refusal when the burdened property is sold as part of a package deal of condominium units. We also find, as the trial court did, nothing in the lease regarding the impact of a group sale of condominium units on the right of first refusal clause. However, we disagree with the trial court that the failure to provide for this contingency renders a right of first refusal unenforceable or otherwise void. Section 31 of appellants' lease provides that the right is triggered if the landlord receives a bona fide offer to purchase the Leased Premises in whole or in part. The Advocate contract contemplates a sale of all of appellee's properties in Bayou Bend Towers. This would necessarily include the whole of each condominium unit.

The fundamental rule of construction of written contracts is to ascertain and give effect to the intention of the parties. *Moore v. Dodge,* 603 S.W.2d 236, 238 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.). "In that regard, it is not the intention which the parties may have had but failed to express in the instrument, but it is the intention which, by said instrument, they did express." *Id.* Appellants' lease, as written, expresses no intent to exclude the single rented unit from any future transfer of multiple condominium units by the owner. Nor does the record contain any written modification of the right of first refusal as mandated by the lease. Therefore, under the facts of this case, the trial court erred in holding that a transfer of multiple condominiums, that includes the burdened property, does not evince an intent to transfer the burdened condominium alone. Such a holding, implying that the unit must be sold alone to activate the right of first refusal, would, in effect, engraft new language onto the lease contract that was not agreed to by the parties. Therefore, we sustain appellants' second point of error.

Accordingly, we reverse the partial summary judgment and remand the case to the trial court for proceedings consistent with this opinion.