Opinion issued April 3, 2008








     






In The
Court of Appeals
For The
First District of Texas




NO. 01–06–01042–CV




NATIONAL ADVERTISING COMPANY, Appellant

V.

LARRY E. POTTER, Appellee




On Appeal from the 270th District Court 
Harris County, Texas
Trial Court Cause No. 2005-60481




MEMORANDUM OPINION
          Appellant, National Advertising Company (“National”),


 leased ground space,
pursuant to three identical lease agreements (“Lease(s)”), to place billboard signs on
three tracts of land of appellee, Larry E. Potter. When the common lease period
expired, a dispute arose concerning renewal of the Leases and the rights to the
billboard structures. Potter sought a declaratory judgment that National exercised its
right of first refusal, as afforded in the Leases, when it rejected Potter’s renewal terms
and that, because the Leases were not renewed, Potter was entitled to purchase the
billboard structures and permits from National. The trial court rendered judgment in
favor of Potter on these points, and National appealed. 
          In two issues, National contends that the trial court erred by misconstruing
certain terms of the Leases. National asks this court to find as a matter of law that
National is entitled to renew the Leases or, alternatively, to remove its billboard
structures from Potter’s land.
          We affirm.
Background
          On August 1, 1995, National and Potter executed the three identical


 ground
Leases at issue. Pursuant to each Lease, National was permitted to erect billboard
signs on each of three tracts of land belonging to Potter in exchange for the greater
of a fixed monthly rental or a percentage of the gross income National derived from
selling advertising space on the billboard signs. The Leases were for a 10-year term,
and, pursuant to paragraph nine of the Leases, at the end of that term, if Potter chose
to further rent or use his land for outdoor advertising, National would have a right of
first refusal with respect to leasing the land.
           The Leases expired on July 31, 2005. National contacted Potter, offered to
renew the Leases, and included a proposed new holdover provision. Potter refused
to renew under such terms and, instead, sent a counter-offer. National refused to
renew the Leases under the terms proposed by Potter. 
          Subsequently, Potter sought to exercise a right to purchase the billboard sign
structures, pursuant to paragraph three of the Leases, which provides as follows:
3. Lose [sic] of Use of Sign Structures. If at any time the highway view
of [National’s] displays is obstructed or obscured, or the use or
installation of such displays is prevented or restricted by law or by
[National’s] inability to obtain or maintain any necessary permits or
licenses, or if there occurs a diversion of traffic from, or a change in the
direction of traffic on highways leading past [National’s] displays,
[National] may, at its option, terminate this lease as to such specific
location by giving 30 days written notice to [Potter]. In the event of
such cancellation or in the event this lease is terminated for any reason
and the parties have not executed a new lease or renewal of this Lease,
[Potter] shall have the option to purchase the entire sign structure and
permits from [National] for the then current market value of an installed
fabricated structure, such value to be determined by the average of three
(3) bids to be obtained from three (3) major sign fabricators.
 
          National sought to enter and remove its billboard signs from Potter’s land,
pursuant to paragraph four of the Leases, which provides as follows:
4. Ownership of Displays. All structures, displays and materials placed
on the said property are [National’s] trade fixtures and equipment and
shall be and remain [National’s] property, and may be removed by
[National] at any time prior to or within a reasonable time (not to exceed
120 days) after the termination of this lease, or any extension thereof. 
[Potter] agrees to allow [National] full access to the property occupied
by the displays for the purpose of erecting, maintaining, changing or
removing the displays at any reasonable time.
 
          Potter sued National, seeking a declaratory judgment that National had
exercised its right of first refusal under paragraph nine by rejecting Potter’s proposed
renewal terms and that Potter was entitled to purchase the sign structures and permits
from National under paragraph three. In addition, the parties filed an agreed motion
for partial judgment, pursuant to Texas Rule of Civil Procedure 263, asking the trial
court to determine whether paragraphs three, four, and nine of the Leases were
ambiguous and, if so, to declare that a fact issue exists that must be tried to a jury and,
if not, to order relief consistent with the trial court’s interpretation of the Leases. 
          Ultimately, in its final judgment, the trial court declared that the Leases are not
ambiguous; that “National exercised its right of first refusal as evidenced by the
correspondence submitted by the parties as part of the agreed facts”; that the word
“termination” as used in the Leases includes the expiration of the lease term; and that
“Potter had the right to purchase the sign structures and permits from [National] for
the current market value of an installed fabricated structure pursuant to the [Leases]
upon termination of the [Leases] for any reason, including expiration.” The trial court
awarded attorney’s fees and costs to Potter. National appealed, contending that the
trial court misconstrued the terms and provisions of the Leases. 
Standard of Review
          Declaratory judgments are reviewed under the same standards as other
judgments. See Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997). 
          In construing a written contract, the primary concern is to ascertain and give
effect to the parties’ intentions as expressed in the document. Frost Nat’l Bank v.
L&F Distribs., Ltd., 165 S.W.3d 310, 311–12 (Tex. 2005). We consider the entire
writing and attempt to harmonize and give effect to all the provisions of the contract
by analyzing the provisions with reference to the whole agreement. Id. at 312. No
single provision is given controlling effect. J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003). “In harmonizing these provisions, terms stated earlier
in an agreement must be favored over subsequent terms.” Coker v. Coker, 650
S.W.2d 391, 394 (Tex. 1983). We construe contracts “from a utilitarian standpoint
bearing in mind the particular business activity sought to be served,” and “will avoid
when possible and proper a construction which is unreasonable, inequitable, and
oppressive.” Frost Nat’l Bank, 165 S.W.3d at 312 (quoting Reilly v. Rangers Mgmt.,
Inc., 727 S.W.2d 527, 530 (Tex. 1987)). 
          If, after the pertinent rules of construction are applied, the contract can be given
a definite or certain legal meaning, it is unambiguous, and we construe it as a matter
of law. Id. However, if the meaning of the contract remains uncertain or is
susceptible to more than one reasonable interpretation, it is ambiguous. Nat’l Union
Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995); Coker, 650
S.W.2d at 393–94. 
          Whether a contract is ambiguous is a question of law to be determined “by
looking at the contract as a whole in light of the circumstances present when the
contract was entered.” Coker, 650 S.W.2d at 394. A court may conclude that a
contract is ambiguous even in the absence of such a pleading by either party. Sage
St. Assocs. v. Northdale Constr. Co., 863 S.W.2d 438, 445 (Tex. 1993).
Renewal of the Leases
          In its second issue, National contends that the trial court erred by declaring that
National exercised its contractual right of first refusal when it declined to accept the
terms of Potter’s renewal offer. We construe National’s contention to be that it
possessed the right to renew the Leases on their original terms.
          Paragraph nine of the Leases provides that 
[a]t the termination of this lease, [Potter] does hereby grant [National]
the right of first refusal to continue to rent the demised property for
advertising purposes if [Potter] elects to rent or use the demised
premises for outdoor advertising purposes. The right of first refusal
shall expire one (1) month after the lease expires.
 
          The Leases expired July 31, 2005. The record shows that National informed
Potter, by letter dated August 10, 2005, that it wished to renew the Leases for a 10-year term. National proposed that the terms remain the same, except that any
holdover at the end of the new term would be on a month-to-month basis until a new
agreement was entered. By letter dated August 25, 2005, Potter declined to renew the
Leases with National’s proposed holdover provision. Instead, Potter offered to renew
the Leases on his proposed renewal terms, the substance of which are not in the
record. National declined to accept renewal on Potter’s terms. 
          National contends, and Potter does not dispute, that the correspondence
between the parties demonstrates that Potter did “elect[] to rent or use the demised
premises for outdoor advertising purposes”—whether through renewing National’s
leases or through buying the signs for his own use. National contends that it
“[t]herefore, had a ‘right of first refusal’ to re-lease the property.” National also
contends that “the right of first refusal [was] triggered at the time the Leases [were]
terminated.” 
          Generally, a right of first refusal, also known as a pre-emptive right or a
preferential right of purchase, is a right granted to a party giving it the first
opportunity to purchase property if the owner decides to sell it. Abraham Inv. Co. v.
Payne Ranch, Inc., 968 S.W.2d 518, 524 (Tex. App.—Amarillo 1998, pet. denied)
(citing Holland v. Fleming, 728 S.W.2d 820, 822 (Tex. App.—Houston [1st Dist.]
1987, writ ref’d n.r.e.)). This concept has, however, been used in the context of a
lease renewal. See, e.g., Kaplan v. Floeter, 657 S.W.2d 1, 2–3 (Tex. App.—Houston
[1st Dist.] 1983, no writ). A right of first refusal has a generally well-established
meaning in the business world as giving the holder of such a right the first
opportunity to purchase property from the owner on the same terms offered by any
third party. Abraham Inv. Co., 968 S.W.2d at 524; Palmer v. Liles, 677 S.W.2d 661,
665 (Tex. App.—Houston [1st Dist.] 1984, writ denied). Once the property owner
conveys the terms of the offer to the holder of the right of first refusal, he then has the
power to accept or reject the offer. Abraham Inv. Co., 968 S.W.2d at 524. In
addition, upon the notification of the owner’s election to convey an interest in the
property and the terms of the offer, the holder’s right matures into an enforceable
option. See id.; Riley v. Campeau Homes (Texas) Inc., 808 S.W.2d 184, 188 (Tex.
App.—Houston [14th Dist.] 1991, writ dism’d); Holland, 728 S.W.2d at 822–23. The
terms of the option are formed by the provision granting the preferential right and by
the provisions contained within the notice of intent given to the holder. Abraham Inv.
Co., 968 S.W.2d at 524–25. Once the owner gives notice of his intent he cannot
change the terms of the offer as long as the option is binding. Id. at 525; Holland,
728 S.W.2d at 822–23. When the holder gives notice to the owner of his acceptance
of the offer, a contract is formed. Abraham Inv. Co., 968 S.W.2d at 525.
          Here, by the express terms of paragraph nine, National’s right of first refusal
was triggered if Potter manifested his intent “to rent or use the demised premises for
outdoor advertising purposes.” Specifically, as Potter contends, National’s first right
of refusal was triggered by Potter’s August 25, 2005 correspondence notifying
National that Potter would re-lease the properties for outdoor advertising and
specifying the terms. 
           Once Potter gave notice of his intent, National’s right of first refusal ripened
into an option. See Riley, 808 S.W.2d at 188; Holland, 728 S.W.2d at 822. Before its
option could ripen into an enforceable contract, however, National had to manifest
its acceptance in strict compliance with the terms that Potter offered. See Probus
Props. v. Kirby, 200 S.W.3d 258, 262 (Tex. App.—Dallas 2006, pet. denied).
Acceptance of an option must be unqualified, unambiguous, and strictly in
accordance with the terms of the offer. Crown Constr. Co., Inc. v. Huddleston, 961
S.W.2d 552, 558 (Tex. App.—San Antonio 1997, no writ). A failure to exercise an
option according to its terms is simply ineffectual, and legally amounts to nothing
more than a rejection. Id. Never has a right of first refusal been understood to mean
that the holder has a privilege to first negotiate with the seller. Abraham Inv. Co.,
968 S.W.2d at 525.
          Here, National declined to renew the Leases on the terms offered by Potter in
his August 25, 2005 correspondence. Hence, National exercised its right of first
refusal when it rejected Potter’s offer.
          National contends that its right of first refusal constituted a contractual right
to renew the Leases on their original terms.


 National contends that because the
renewal terms governing the right-of-first-refusal provision are “not clarified in the
Leases,” the provision simply operates as a “general extension or renewal clause” and
it is implied that the renewal terms would be the same as those agreed to in the
original Leases, relying on Aldridge v. Young, 689 S.W.2d 342 (Tex. App.—Fort
Worth 1985, no writ). 
          In Aldridge, the court examined a provision which stated that “[t]he lease shall
be renegotiated” within a certain period surrounding the expiration date of each lease
and that “[t]he lessee has the option to extend this lease.” Id. at 345–46. There, the
appellees argued that any extension or option to extend the lease was invalid because
the lease failed to specify the amount of rent applicable to the extended term. Id. at
347. In concluding that the renewal terms would be the same as that in the original
lease, the court explained that “[i]t is an established rule that a general covenant to
renew or extend a lease which is silent as to the terms of the renewal or extension
implies a renewal or extension upon the same terms and conditions as provided in the
original lease. . . .” Id. 
          There is an important distinction between Aldridge and the case at hand. In
Aldridge, the lessee was granted an “option,” which the court considered “a general
covenant to renew or extend” the lease. The holder of an option has purchased the
right to compel a transfer of property on stated terms, prior to the expiration of the
option. Riley, 808 S.W.2d at 187. Option contracts have two components: (1) an
underlying contract that is not binding until accepted and (2) a “covenant” to hold
open to the optionee the opportunity to accept. Id.
          Unlike an option contract, a right of first refusal is merely a pre-emptive right
that does not grant the holder the power to compel an unwilling owner to transfer his
property. See ACS Inv. Inc. v. McLaughlin, 943 S.W.2d 426, 428 n.2 (Tex. 1997);
Riley, 808 S.W.2d at 187. Here, Potter did not make a general promise or covenant
to renew the Leases. To the contrary, the Leases expressly provide that Potter merely
granted National “the right of first refusal to continue to rent the demised property
for advertising purposes if [Potter] elects to rent or use the demised premises for
outdoor advertising purposes.” (Emphasis added.) Once Potter elected to lease the
property, National was granted the right to accept or reject the terms. National was
given the first right of refusal and refused Potter’s offer.



          Accordingly, National’s second issue is overruled.
The Billboard Signs
          In its first issue, National contends that the trial court erred by failing to give
effect to all of the provisions of the Leases. Specifically, National contends that the
trial court erred by declaring that Potter had the right to purchase the billboard signs,
rather than declaring that National had the right to remove the signs, because the trial
court misconstrued paragraphs three and four of the Leases. 
          After the parties failed to reach an agreement regarding the renewal of the
Leases, Potter informed National, by letter dated September 1, 2005, that he would
exercise his right under the Leases to purchase the billboard sign structures and
permits.
           Pursuant to paragraph three:
3. Lose [sic] of Use of Sign Structures. If at any time the highway view
of [National’s] displays is obstructed or obscured, or the use or
installation of such displays is prevented or restricted by law or by
[National’s] inability to obtain or maintain any necessary permits or
licenses, or if there occurs a diversion of traffic from, or a change in the
direction of traffic on highways leading past [National’s] displays,
[National] may, at its option, terminate this lease as to such specific
location by giving 30 days written notice to [Potter]. In the event of
such cancellation or in the event this lease is terminated for any reason
and the parties have not executed a new lease or renewal of this Lease,
[Potter] shall have the option to purchase the entire sign structure and
permits from [National] for the then current market value of an installed
fabricated structure, such value to be determined by the average of three
(3) bids to be obtained from three (3) major sign fabricators.
 
(Emphasis added.) 
          The word “terminated,” emphasized above, is not defined in the Leases. The
trial court construed the term “terminated,” as used in the Leases, to mean “any time
the lease agreements come to an end for any reason, including expiration of the lease
terms.” The trial court declared that “Potter had the right to purchase the sign
structures and permits from [National] for the current market value of an installed
fabricated structure pursuant to the [Leases] upon termination of the [Leases] for any
reason, including expiration.” Hence, the trial court concluded that, once the Leases
expired on July 31, 2005, Potter had the right to purchase them under the terms
specified in the Leases.
          National challenges the trial court’s interpretation of the word “terminated” to
include expiration of the Leases. National contends that such interpretation renders
paragraph four meaningless. Paragraph four permits National to remove its trade
fixtures, as follows:
4. Ownership of Displays. All structures, displays and materials placed
on the said property are [National’s] trade fixtures and equipment and
shall be and remain [National’s] property, and may be removed by
[National] at any time prior to or within a reasonable time (not to
exceed 120 days) after the termination of this lease, or any extension
thereof. [Potter] agrees to allow [National] full access to the property
occupied by the displays for the purpose of erecting, maintaining,
changing or removing the displays at any reasonable time.
 
          National contends that the words “terminated” and “termination” are used
differently in paragraphs three and four. National contends that, in paragraph three,
“terminated” is used in the context of circumstances which effectively terminate the
usefulness of the signs as an advertising medium. In paragraph four, “termination”
means the expiration of the Leases by their own terms, as occurred herein. Hence,
National contends that paragraph four governs and permits it to remove the signs.
          Examining paragraph three and giving its terms their generally accepted
meaning, it is clear that the parties intended that, in the event that a specific sign or
location became useless by the occurrence of one of various specified situations,
National was granted the right to immediately terminate its Lease of the specific
location. Paragraph three grants Potter the option to purchase the sign structures and
permits from National, “[i]n the event of such cancellation.” (Emphasis added.) 
          However, paragraph three contemplates a second situation in which Potter is
granted the option to purchase the signs and permits from National: “in the event this
lease is terminated for any reason and the parties have not executed a new lease or
renewal of this Lease.” Paragraph three also governs in the event that the Leases are
terminated “for any reason” and the parties do not execute a new lease or a “renewal.” 
Use of the term “renewal” naturally contemplates an expiration. That the parties
could have intended the circumstance in which one party prematurely terminates the
Lease and then “renews” it is not a reasonable interpretation. Hence, the parties must
have intended “terminated,” as used within the Leases, to include expiration.
          Pursuant to paragraph four, the parties agreed that the billboard structures
constitute trade fixtures, that they belong to National, and that they “may be removed
by [National] at any time prior to or within a reasonable time (not to exceed 120
days) after the termination of this lease, or any extension thereof.” Having
determined that the parties intended “termination,” as used in the Leases, to includes
expiration of the lease period, then, pursuant to paragraph four, National retained the
right to remove the signs upon the expiration of the Leases. This interpretation is
reasonable in light of the rest of the provisions in the Leases because there is no other
provision in the Leases that affords National the opportunity the remove the signs
upon the expiration of the lease period. To interpret “termination” in paragraph four
as not to include expiration of the Leases would leave National without any right to
remove the billboard signs once the Leases expired.
          The terms “terminated” and “termination,” as used in paragraphs three and four
of the Leases, mean the same thing and include the expiration of the Leases on their
natural terms. Because the Leases have been drafted so that each party has a right to
the signs upon the expiration of the lease period, the issue becomes what the parties
intended with regard to the nature and timing of those rights. 
          Unlike National’s right to remove the signs in paragraph four, Potter’s option
to purchase the signs in paragraph three does not have a time limit. The issue is
whether the parties intended that Potter be given the option to purchase the signs if,
and only if, National does not remove them within 120 days after the Leases expire
and are not renewed, or if National retains the right to remove the signs if, and only
if, Potter does not exercise his option to purchase them. 
          In harmonizing provisions of a contract, “terms stated earlier in an agreement
must be favored over subsequent terms.” Coker, 650 S.W.2d at 394. Potter’s option
to purchase the signs appears in paragraph three and National’s right to remove the
signs appears later, in paragraph four. Potter’s option comes first in the agreement
and therefore must be favored.
          However, we also must construe a contract “from a utilitarian standpoint
bearing in mind the particular business activity sought to be served. . . .” Frost Nat’l
Bank, 165 S.W.3d at 312. Because, in paragraph three, Potter’s right to purchase the
signs immediately follows language concerning situations in which the signs became
useless to National for a variety of stated reasons, it follows that paragraph three
generally contemplates that, under such circumstances, National would allow the
Leases to expire and would not renew them. Hence, it is still reasonable to construe
paragraph three as first granting Potter the option to purchase the signs before
National incurs the costs to remove them. Indeed, paragraph four allows, but does
not require, National to remove the billboards from Potter’s property if the Leases are
terminated. 
          In addition, pursuant to paragraph three, National granted Potter an “option”
to purchase the signs in the event that the Leases are terminated for any reason and
the parties do not execute a renewal. By definition, the holder of an “option” has the
right to compel a transfer of property. Riley, 808 S.W.2d at 188. As we have said,
option contracts have two components: (1) an underlying contract that is not binding
until accepted and (2) a covenant to hold open to the optionee the opportunity to
accept. See Riley, 808 S.W.2d at 187. Here, the parties stipulated in paragraph three
the means by which the purchase price of the signs would be calculated, and National
promised to hold open the opportunity for Potter to purchase the signs if and when
the Leases were terminated, which we have concluded includes their expiration.
          We conclude that the Leases are not ambiguous and that the word “terminate,”
as used in the Leases, includes the expiration of the lease term. Applying the same
definition of “terminate” throughout the provisions of the Leases, paragraph four
grants National the right to remove its signs within 120 days after the Leases expire. 
However, such right is subject to the option that National granted to Potter to first
purchase the signs. Should Potter decline to exercise his option, National has the
right to remove the signs. 
          National contends that to construe the Leases as we have operates as a
forfeiture of the signs, as to National. We disagree. As the parties agreed under
paragraph three, if, at the end of the 10-year-lease term, Potter exercised his option
to purchase the signs, he must pay “the then current market value of an installed
fabricated structure, such value to be determined by the average of three (3) bids to
be obtained from three (3) major sign fabricators.” Thus, the parties agreed that
Potter would have to buy National’s 10-year-old signs at the price of brand new signs,
installed, at current prices. The exercise of Potter’s option fully compensates
National for the cost of erecting brand new signs on another property.
          We overrule National’s first issue.
Conclusion
          We affirm the judgment of the trial court.
 

                                                             Laura Carter Higley
                                                             Justice
 
 
Panel consists of Justices Taft, Hanks, and Higley.