# IN THE SUPREME COURT OF TEXAS

No. 17-0093

CARL M. ARCHER TRUST NO. THREE, MARY FRANCES G. ARCHER TRUST NO.
THREE, AND MARY ARCHER DIXON AND CARLA ARCHER JOHNSON, TRUSTEES,
PETITIONERS,

v.

RONALD RALPH TREGELLAS AND DONNITA TREGELLAS, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

*~ consolidated for oral argument with ~*

No. 17-0094

CARL M. ARCHER TRUST NO. THREE, MARY FRANCES G. ARCHER TRUST NO.
THREE, AND MARY ARCHER DIXON AND CARLA ARCHER JOHNSON, TRUSTEES,
PETITIONERS,

v.

RONALD RALPH TREGELLAS AND DONNITA TREGELLAS, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

**Argued September 13, 2018**

JUSTICE LEHRMANN delivered the opinion of the Court.

This case concerns whether the statute of limitations bars a claim for breach of a recorded right of first refusal to purchase a mineral interest. The grantors of the right conveyed the mineral interest to a third party without notifying the holders. More than four years later, the rightholders learned of the conveyance and sued the third party for breach, seeking specific performance. The trial court rendered judgment for the holders, but the court of appeals reversed, holding that the statute of limitations bars the claim. Specifically, the court of appeals held that the rightholders' cause of action accrued when the grantors conveyed the property without notice and that the discovery rule does not apply to defer accrual. We agree with the court of appeals' first conclusion but disagree with the second. Accordingly, we reverse the court of appeals' judgment in part and reinstate the trial court's judgment.

## I. Background

On June 12, 2003, members of the Cook family executed a warranty deed conveying the surface estate of a tract of land in Hansford County, Texas,[1] to the trustees of the Carl M. Archer Trust No. Three and the Mary Frances G. Archer Trust No. 3 (Trustees).[2] The sellers retained ownership of the mineral estate but separately granted Trustees a right of first refusal (ROFR) to purchase the minerals. The ROFR stated in relevant part:

> [The Cooks] . . . have sold and granted, and by these presence do hereby SELL and GRANT unto [Trustees] the Right of First Refusal to purchase the following land described as follows, to-wit:

---

[1] The sellers include Robert Lynn Cook, Sharon Sue Cook Farber, Brenda Jean Cook Smith, and Lacie Anne Baker Tidwell, individually and as co-trustees of the A.F. Cook Children's Trust, as well as those individuals' respective spouses, Sharon Kaye Cook, Rodney Farber, Ed Smith, and Trent Tidwell.

[2] Trustees are Mary Archer Dixon and Carla Archer Johnson.

2

. . . .

Tract 4:    All of the oil, gas, and other minerals in, on or under W/2 of Section 85, Block 4-T, T&NO Ry. Co. Survey, Ochiltree County, Texas.

. . . .

This right of first refusal shall be construed to mean that in the event that [the grantors], or their successors and/or assigns, desire to sell any or all of the above described property, [Trustees], their heirs or assigns, shall have the right to purchase the property, at the same price and on the same terms and conditions as offered by any other bona fide buyer.

[Trustees] shall have sixty (60) days after receipt of said offer to either accept or reject said offer. In the event that [Trustees] do[] not elect to accept said offer, and the property is purchased by the bona fide buyer, set forth above, at the offered price, then this agreement shall be null and void and of no further force and effect, only as to the property so purchased . . . .

The warranty deed and ROFR were filed in the Hansford County property records on June 16, 2003.

Trustees' attorney subsequently discovered that the ROFR erroneously described the property as being in Ochiltree County rather than Hansford County. The attorney drafted a Right of First Refusal Correction accurately describing the county. That document was signed by some of the original ROFR grantors and filed in the Hansford County property records in September 2004.

On March 28, 2007, Sharon Sue Cook Farber and Rodney Farber—two of the ROFR grantors—executed a mineral deed conveying their interest in the Tract 4 minerals to Ronald Ralph Tregellas and Donnita Tregellas. The deed was recorded on March 30, 2007. Before conveying the interest, the Farbers did not notify Trustees of the Farbers' intent to sell or of the price, terms, and conditions of the Tregellases' offer. Nor were Trustees notified about the sale after the fact.

3

Trustees learned of the conveyance over four years later, on May 4, 2011, when they were advised of it by a prospective oil and gas lessee. The next day, Trustees sued the Farbers and the Tregellases for breach of the ROFR and tortious interference, alleging that Trustees had the right to purchase the conveyed interest, that they had not been given notice of the sale, and that they "desire to exercise their right to purchase the [conveyed] interest."[3] Trustees sought damages as well as specific performance, asking the trial court to order the "transfer of the property" from the Tregellases to Trustees. They also requested attorney's fees.

The defendants raised several affirmative defenses, including that the four-year statute of limitations barred the contract claims. Trustees ultimately amended their pleadings to nonsuit their claims against the Farbers and pursue relief against only the Tregellases.[4] In their amended pleadings, Trustees alleged that upon their receipt of notice in 2011 of the Farbers' conveyance to the Tregellases, Trustees' right of first refusal "ripened into" an option to purchase the conveyed interest at the same price and on the same terms and conditions, and that Trustees timely exercised that option by filing suit. They further alleged that the Tregellases purchased the interest with actual or constructive notice of the ROFR and thus "st[oo]d in the shoes of the Farber[s]." Trustees sought "specific performance of the contract created by their exercise of the option to purchase." They also pled that the statute of limitations did not bar their contract claims because (1) the

_____

[3] Trustees initially named the Tidwells—two other ROFR grantors—as additional defendants, alleging they similarly breached the ROFR by selling their undivided interest in the Tract 4 minerals to the Tregellases without notifying Trustees. The Tidwells answered that their conveyance to the Tregellases was "an oversight and unilateral mistake" and that the conveyance had been rescinded, leaving the parties "in the same position they were before the controversy was created." Trustees eventually nonsuited their claims involving the Tidwell interest.

[4] After filing suit, Trustees learned that the Tregellases had also acquired the mineral interest of the two remaining ROFR grantors—the Smiths—and Trustees amended their petition to seek specific performance as to that interest as well. The trial court rendered judgment for Trustees as to the Smith interest, and the court of appeals affirmed. 507 S.W.3d 423, 437 (Tex. App.—Amarillo 2016). The Tregellases do not seek relief here from that portion of the court of appeals' judgment, which is therefore final.

4

contract at issue was created when Trustees exercised their option to purchase the mineral interest, which occurred less than four years before suit was filed, and alternatively (2) the discovery rule and the doctrine of fraudulent concealment tolled the limitations period.

After a bench trial, the trial court rendered judgment for Trustees and granted specific performance, ordering the Tregellases to convey the pertinent mineral interest to Trustees upon their deposit of the purchase price—set at $9,000, the amount the Tregellases had paid—into the court's registry.[5]  The court also awarded Trustees their attorney's fees.  In its findings of fact, the trial court concluded that by filing their original petition, Trustees "exercised their right of first refusal under the ROFR to purchase the Farber interest from the [Tregellases]."  The trial court further found that the Farbers and the Tregellases did not disclose to Trustees that the Farbers were willing to sell their mineral interest, and that Trustees "did not know, nor in the exercise of reasonable care and diligence, should they have known that the Farbers were willing to sell their mineral interests . . . until they were notified of same by a third party on May 4, 2011."  Finally, the court found that, had Trustees been notified earlier of that fact, "they would have immediately filed suit to enforce their rights under the ROFR."  In its conclusions of law, the court held that the Tregellases took the Farbers' mineral interest with notice of the ROFR and were not bona fide purchasers for value, that the statute of limitations did not bar Trustees' causes of action, and that Trustees were "entitled to specific performance of the ROFR."

---

[5] The trial court also found that Trustees were entitled to recover $25,666.00 from the Tregellases "as the equitable adjustment required to put [Trustees] in the same position they would have been had the[y] been allowed to timely exercise their rights under the ROFR."  Aside from their argument that Trustees' claims are time-barred, the Tregellases have not complained on appeal about this portion of the trial court's judgment.

5

The Tregellases appealed, arguing that the trial court erred in finding that the statute of limitations did not bar Trustees' claim.[6] The court of appeals agreed and reversed, holding that Trustees' cause of action for breach of contract accrued when the minerals were conveyed without notice. 507 S.W.3d 423, 430 (Tex. App.—Amarillo 2016). The court of appeals also held that the discovery rule does not apply to delay accrual because Trustees' injury is "of the type that generally is discoverable by the exercise of reasonable diligence." *Id.* at 433. Finally, because the court's reversal on the merits impacted the propriety of the award of attorney's fees, the court severed the issue of entitlement to attorney's fees into a new cause, reversed the fee award, and remanded the severed cause to the trial court to redetermine that issue. *Id.* at 437.

Trustees filed petitions for review of both judgments. The petitions were consolidated for oral argument.

## II. Analysis

### A. Rights of First Refusal

Because Trustees' right of first refusal is central to this dispute, we begin with a discussion of the legal principles governing this interest. "A right of first refusal, also known as a preemptive or preferential right, empowers its holder with a preferential right to purchase the subject property on the same terms offered by or to a bona fide purchaser." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 644 (Tex. 1996). Generally, a right of first refusal requires the grantor to notify the holder of his intent to sell and to first offer the property to the holder on the same terms and conditions offered by a third party. *See id.*; *Navasota Res., L.P. v. First Source Tex., Inc.*, 249

---

[6] The Tregellases also argued that the ROFR's incorrect description of the county rendered the ROFR "ineffective" under the statute of frauds. Both the trial court and the court of appeals rejected this argument, 507 S.W.3d at 428–29, and the Tregellases do not reurge it here.

6

S.W.3d 526, 532 (Tex. App.—Waco 2008, pet. denied). When the grantor communicates those terms to the holder, the right "ripens into an enforceable option." *FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., LLP*, 301 S.W.3d 787, 793 (Tex. App.—Fort Worth 2009, pet. denied) (quotation omitted); *Durrett Dev., Inc. v. Gulf Coast Concrete, LLC*, No. 14-07-01062-CV, 2009 WL 2620506, at *4 (Tex. App.—Houston [14th Dist.] Aug. 27, 2009, no. pet.) (mem. op.). The holder may then elect to purchase the property according to the terms of the instrument granting the first-refusal right and the third party's offer, or decline to purchase it and allow the owner to sell to the third party. *See Jarvis v. Peltier*, 400 S.W.3d 644, 652 (Tex. App.—Tyler 2013, pet. denied).[7]

A grantor's sale of the burdened property to a third party without first offering it to the rightholder on the same terms constitutes a breach of contract. *Riley v. Campeau Homes (Tex.), Inc.*, 808 S.W.2d 184, 188 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd). When a right of first refusal relating to real property is breached, rightholders most frequently seek the remedy of specific performance.[8] Robert K. Wise, et al., *First Refusal Rights Under Texas Law*, 62 BAYLOR L. REV. 433, 502 (2010). If the property has already been conveyed to a third party, however, the only remedy available from the grantor is money damages. *See, e.g., Koch Indus., Inc. v. Sun Co.*, 918 F.2d 1203, 1214 (5th Cir. 1990). Nevertheless, as discussed below, specific performance may still be available as a remedy against the third-party purchaser.

---

[7] Disputes often arise over whether a rightholder properly exercises the ripened option to purchase. We need not discuss the related legal principles because no such dispute is before us here.

[8] To be entitled to specific performance, the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008).

To that end, a person who purchases property with actual or constructive notice of a right of first refusal takes the property subject to that right. *See Jarvis*, 400 S.W.3d at 652–53. And courts are in agreement that such a purchaser "stands in the shoes of the original seller when specific performance is sought and may be compelled to convey title to the [holder of the right of first refusal]." *Id.* at 653; *see also A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 673 (Tex. App.—Austin 2003, pet. denied) ("When a sale is made in breach of the right of first refusal, it therefore creates in the rightholder an enforceable option to acquire the property according to the terms of the sale."); *Riley*, 808 S.W.2d at 188 ("A sale or transfer of property burdened by a right of first refusal without making an offer to the holder of the right is a breach of contract for which the remedy of specific performance is available."). This accords with our longstanding jurisprudence regarding executory contracts for the sale of real property, which may be enforced by specific performance when a third party purchases the property with notice of the contract. *Scarborough v. Arrant*, 25 Tex. 129, 130 (Tex. 1860); *see also Langley v. Norris*, 173 S.W.2d 454, 457 (Tex. 1943) ("One who, with knowledge, actual or constructive, of the executory contract acquires the legal title [from] the vendor subsequently to an executory contract for the sale of land . . . , may be compelled, at the suit of the vendee under the executory contract, to perform the contract by conveying the legal title, if the conditions are such that such relief could have been granted against the vendor if he had not transferred the legal title.").

Here, the Farbers sold their mineral interest to the Tregellases without notifying Trustees, despite the Farbers' obligation to first offer the interest to Trustees on the same terms. Pursuant to the trial court's unchallenged findings, the Tregellases purchased the interest with notice of the ROFR and thus stand in the Farbers' shoes with respect to Trustees' request for specific

8

performance.  In this Court, the Tregellases' sole challenge to the trial court's judgment granting specific performance is that Trustees' claim is barred by the statute of limitations as a matter of law.  Accordingly, we address only that issue.

## B. Statute of Limitations

### 1. Accrual of Cause of Action

The statute of limitations is an affirmative defense that serves to "establish a point of repose and to terminate stale claims."  *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990).  The parties do not dispute that Trustees' contract claim is governed by the four-year statute of limitations, meaning they were required to assert it within four years after the cause of action accrued.  *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(1) (requiring a suit seeking specific performance of a contract for the conveyance of real property to be brought "not later than four years after the day the cause of action accrues"); *see also Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (four-year limitations period applies to contract claims).  At issue is the accrual date.

As a general matter, "a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy."  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).  Put differently, a cause of action accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."  *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).  Under this rule, a cause of action for breach of contract accrues at the moment the contract is breached.  *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015).  As noted, Texas courts consistently hold, and we agree, that a right of first refusal is breached when property is conveyed to a third party without notice to the rightholder.  *See, e.g.*, *McMillan v. Dooley*, 144 S.W.3d 159,

9

172 (Tex. App.—Eastland 2004, pet. denied); *Carrico v. Kondos*, 111 S.W.3d 582, 588 (Tex. App.—Fort Worth 2003, pet. denied); *Riley*, 808 S.W.2d at 188; *see also* 3 TIMOTHY MURRAY, CORBIN ON CONTRACTS § 11.4 (rev. ed. 2018) ("This right [of first refusal] contemplates that the grantor of the right will communicate to the holder the offer that the grantor is contemplating accepting.").

Applying these principles, the court of appeals in this case held that Trustees' cause of action accrued "when [their] bargained-for right of first refusal had been dishonored and the agreement breached." 507 S.W.3d at 430–31. This happened no later than March 28, 2007, when the Farbers deeded the mineral interest to the Tregellases. *Id.* at 430. In this Court, the Tregellases similarly argue that Trustees' cause of action accrued when the Farbers conveyed the mineral interest without notifying Trustees, more than four years before suit was filed.

Trustees disagree with this reasoning and contend that their cause of action accrued not in 2007, when the Farbers sold the property without notifying Trustees, but in 2011, when Trustees attempted to exercise their option to purchase (by seeking specific performance), which only "ripened" once they learned of the earlier conveyance. *See A.G.E.*, 105 S.W.3d at 673 ("When the rightholder learns of a sale in violation of her right [of first refusal], she again has the opportunity to either accept or reject within the specified time frame, just as if the offer to buy had been properly noticed . . . ."). More specifically, Trustees argue that the ROFR was not impaired or lost via the conveyance because the Tregellases took the property subject to that right, and Trustees retained the ability to exercise their option once they received notice. In addition, they argue that no legal injury could occur until they attempted to exercise their right because the ROFR did not bind Trustees; it merely provided them an opportunity to purchase upon notice.

10

We agree with the court of appeals that the rules governing the accrual of causes of action point to the date of conveyance as the accrual date for limitations purposes. Again, the ROFR was breached when the Farbers conveyed their mineral interest without notifying Trustees of the Tregellases' offer. At that point, Trustees' preemptive right was impaired despite the fact that the Tregellases took the property subject to that right. This is because even if Trustees retained the right to purchase the mineral interest (albeit from the Tregellases rather than the Farbers) once they learned of the conveyance, they lost their right to purchase the interest at the time contemplated by the ROFR: *before* the property was sold to a third party. *See id.* (noting that a first-refusal right "requires the owner, before selling the property to another, to offer it to the rightholder on the terms and conditions specified in the contract granting the right"); *cf. Koch Indus.*, 918 F.2d at 1214 (explaining that a rightholder who would not have exercised his option at the time of the grantor's breach has suffered no legal damage).[9]

Further, a closer examination of Trustees' theory reveals its circular reasoning. As explained, Trustees argue that they were injured only when they attempted to exercise their option by seeking specific performance. Thus, according to Trustees, by suing for specific performance, they suffered an injury entitling them to sue for specific performance. At bottom, Trustees fail in their attempt to materially distinguish between an action to enforce the ROFR—which was breached by the Farbers in 2007—and an action to enforce a contract to purchase the mineral

---

[9] We note that Trustees appear to have controverted their own accrual theory by seeking (and obtaining) relief from the trial court in the form of an "equitable adjustment" of over $25,000, which, according to the court's findings, represents the total amount the Tregellases have received in lease bonuses and extension fees on the purchased mineral interest since the Farbers conveyed it to them in March 2007. If Trustees were not injured until they sued for specific performance on May 5, 2011, surely they would not be entitled to any lease benefits the Tregellases received before that date.

11

interest from the Tregellases, who acquired the interest subject to the ROFR. The genesis of both claims is a breach of the ROFR.

In sum, when the Farbers sold the burdened mineral interest to the Tregellases in March 2007 without first giving Trustees the opportunity to purchase it pursuant to the ROFR, "a wrongful act cause[d] a legal injury," authorizing Trustees to "seek a judicial remedy." *Knott*, 128 S.W.3d at 221; *S.V.*, 933 S.W.2d at 4. Because Trustees sued more than four years after they were injured, the claim is time-barred unless the accrual date is otherwise deferred.

### 2. Discovery Rule

The discovery rule is a "limited exception" to the general rule that a cause of action accrues when a legal injury is incurred. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011). When applicable, the rule defers accrual until the plaintiff knew or should have known of the facts giving rise to the cause of action. *S.V.*, 933 S.W.2d at 4. We apply the discovery rule when the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable. *Id.* at 6. These two elements attempt to strike a balance between the policy underlying statutes of limitations (barring stale claims) and the objective of avoiding an unjust result (barring claims that could not be brought within the limitations period). *Id.* at 3, 6. The parties do not dispute that the injury here is objectively verifiable; in contention is discoverability.

An injury is inherently undiscoverable when it is "unlikely to be discovered within the prescribed limitations period despite due diligence." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313–14 (Tex. 2006) (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001)). The determination of whether an injury is inherently undiscoverable is made on a categorical basis rather than on the facts of the individual case. *HECI Expl. Co. v. Neel*, 982

S.W.2d 881, 886 (Tex. 1998). Here, therefore, we look not to whether Trustees in particular could have discovered their injury with diligence, but whether Trustees' injury was "the type of injury that could be discovered through the exercise of reasonable diligence." *BP Am. Prod. Co.*, 342 S.W.3d at 66.

The court of appeals held that Trustees' injury was not inherently undiscoverable. 507 S.W.3d at 433. It noted that a conveyance of real property, including one made in violation of a right of first refusal, is likely to be reflected in a publicly recorded instrument and that knowledge of the conveyance may also be gleaned from "other public sources like tax rolls and from commercial sources like abstractors." *Id.* The court thus concluded that the holder of a first-refusal right exercising reasonable diligence to protect its interest (as contracting parties must do) would have discovered the conveyance. *See id.* And the court of appeals rejected Trustees' argument that ROFR holders are akin to property owners who have no duty to routinely search public records for documents impugning their title; instead, it concluded that an ROFR holder has a mere contractual right to purchase property on the occurrence of certain events. *Id.* at 433–34.

We have held that the discovery rule applies in certain circumstances even though the injury could have been gleaned from reviewing publicly available information. For example, in *Kelley v. Rinkle*, we held that the rule delayed accrual of a libel action based on the submission of a false credit report to a reporting agency. 532 S.W.2d 947, 949 (Tex. 1976). We explained that a "person will not ordinarily have any reason to suspect that he has been defamed by the publication of a false credit report to a credit agency until he makes application for credit to a concern which avails itself of the information furnished by the credit agency." *Id.* In turn, we concluded that applying the general accrual-at-injury rule would enhance the potential for abuse

by wrongdoers and that the policy considerations weighed in favor of deferring accrual until the person defamed learns of, or by reasonable diligence should have learned of, the existence of the credit report. *Id.*

Using similar reasoning, courts have applied the discovery rule to a property owner's fraudulent-lien claims despite the lien's filing in the property records. *E.g.*, *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 369–70 (5th Cir. 2012) (applying Texas law). Such an injury is nevertheless inherently undiscoverable where the property owner has "no reason . . . to believe that any adverse claim has been made on his property, and no reason to be checking regularly to see whether such a filing has been made." *Id.* at 368. This is consistent with the well-settled principle that one who "already owns the land . . . is not required to search the records every morning in order to ascertain if something has happened that affects his interests or deprives him of his title." *Cox v. Clay*, 237 S.W.2d 798, 804 (Tex. Civ. App.—Amarillo 1950, writ ref'd n.r.e.); *cf. Leonard v. Benford Lumber Co.*, 216 S.W. 382, 384 (Tex. 1919) (noting that "registration of an instrument carries notice of its contents only to those bound to search for it, among whom are *subsequent* purchasers") (emphasis added).

On the other hand, we have held that the discovery rule does not apply to royalty owners' claims of underpayment of royalties where "[r]eadily accessible and publicly available information" would have revealed the underpayments. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929–30 (Tex. 2011); *BP Am. Prod. Co.*, 342 S.W.3d at 66–67. We have rejected royalty owners' arguments that "due diligence did not require that they verify information or payments received from their lessees," confirming that they must "exercise due diligence in enforcing their contractual rights . . . within the statutory limitations period." *Via Net*, 211 S.W.3d at 314

14

(discussing *HECI Expl. Co.*, 982 S.W.2d at 887, and *Wagner & Brown*, 58 S.W.3d at 737) (internal quotations omitted).  And in *Via Net*, we recognized that application of the discovery rule to contract claims "should be rare, as diligent contracting parties should generally discover any breach" during the limitations period.  *Id.* at 315.

The Tregellases argue that holders of first-refusal rights resemble royalty owners with a duty to verify a lessee's contractual compliance, while Trustees compare such rightholders to property owners with no duty to continually confirm that their title is not being unlawfully impugned.  As the Tregellases note, a right of first refusal does not itself convey title to its holder.  But we have described the right as a property interest that "runs with the land itself and thus . . . is not a collateral or personal contract between the parties."  *Stone v. Tigner*, 165 S.W.2d 124, 127 (Tex. App.—Galveston 1942, writ ref'd).  Further, as discussed, one who purchases property with actual or constructive notice of a first-refusal right does so subject to that right.  *Jarvis*, 400 S.W.3d at 652–53.  Considering the nature of the first-refusal right, and balancing the appropriate policy considerations, we conclude that the discovery rule applies.

A right of first refusal has been described as "essentially a dormant option."  *A.G.E.*, 105 S.W.3d at 673.  The rightholder has no right to compel or prevent a sale *per se*; rather, as explained, he has the "right to be offered the property at a fixed price or at a price offered by a bona fide purchaser *if and when* the owner decides to sell."  *Abraham Inv. Co.*, 968 S.W.2d at 525 (emphasis added).  Only when the grantor communicates her intention to sell and discloses the offer does the holder have a duty to act by electing to accept or reject the offer.  *A.G.E.*, 105 S.W.3d at 673.  In accordance with this principle, the ROFR in this case required Trustees to accept or reject a bona

fide offer to purchase the Farbers' mineral interest no later than "sixty (60) days after receipt of said offer."

In light of the grantor's duty to provide notice of an offer, the corresponding absence of the rightholder's duty to act before receipt of said notice, and the fact that a purchaser takes property subject to a recorded first-refusal right, we agree with Trustees that a rightholder who has been given no notice of the grantor's intent to sell or the existence of a third-party offer generally has no reason to believe that his interest may have been impaired. In turn, we cannot conclude that such a rightholder in the exercise of reasonable diligence would continually monitor public records for evidence of such an impairment. This is in stark contrast to a rightholder who, for example, learns of the existence of a third-party offer but is unable, despite a reasonable investigation, to clarify the offer's specific terms. *See Comeaux v. Suderman*, 93 S.W.3d 215, 221 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (noting that a grantor must make reasonable disclosure of an offer's terms, while a holder must undertake a reasonable investigation of any terms that are unclear). Under those circumstances, the holder is given some indication the grantor intends to convey the property and thus has reason to monitor whether that has occurred.

We therefore hold that a grantor's conveyance of property in breach of a right of first refusal, where the rightholder is given no notice of the grantor's intent to sell or the purchase offer, is inherently undiscoverable and that the discovery rule applies to defer accrual of the holder's cause of action until he knew or should have known of the injury.[10] In this instance, the opposing policies at play—on the one hand, preventing stale claims and on the other, discouraging deceptive

---

[10] We limit our holding to this particular breach—conveyance with *no* notice of the intent to sell or the existence of an offer—of this particular type of right.

16

conduct and ensuring claims are not barred before a party even knows he is injured—weigh in favor of applying the discovery rule.

Here, the trial court found that Trustees did not know of their injury, nor in the exercise of reasonable diligence should they have known, until May 4, 2011. Other than their general arguments regarding the nature of Trustees' injury, which we have rejected, the Tregellases do not challenge this finding. That is, the Tregellases point to no evidence that purportedly would or should have put Trustees on notice before May 2011 that the Farbers had (or even may have) conveyed the burdened mineral interest. Therefore, Trustees sued well within four years of the date the cause of action accrued, and the statute of limitations does not bar their claim.

### C. Attorney's Fees

Because the court of appeals partially reversed the trial court's judgment on the merits, it also reversed the award of attorney's fees, severing and remanding that issue for reconsideration. In light of our reversal of the court of appeals' judgment on Trustees' underlying claims, the court's judgment as to attorney's fees similarly cannot stand. Accordingly, we reverse that judgment as well.

### III. Conclusion

The court of appeals erred in reversing the portion of the trial court's judgment granting Trustees specific performance of the ROFR with respect to the Farbers' conveyed mineral interest. Consequently, the court of appeals also erred in reversing the trial court's award of attorney's fees. We therefore reverse the court of appeals' judgment in part in Cause No. 17-0993, reverse the court's judgment in Cause No. 17-0994, and reinstate the trial court's judgment.

17

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** November 16, 2018