732 S.W.2d 717 (1987)
MISSOURI PACIFIC RAILROAD COMPANY, Appellant,
v.
DALLAS COUNTY APPRAISAL DISTRICT, Dallas County Appraisal Review Board, and John Marshall, Appellees.
No. 05-86-00518-CV.
Court of Appeals of Texas, Dallas.
May 21, 1987.
Rehearing Denied July 10, 1987.
*718 John P. Legendre, Dallas, for appellant.
Peter G. Smith, Roy L. Armstrong, Dallas, for appellees.
Before DEVANY, STEWART and ROWE, JJ.
ROWE, Justice.
The Missouri Pacific Railroad Company brought this action against the Dallas County Appraisal District, the Dallas County Appraisal Review Board, and John Marshall as chief appraiser for the district. The railroad sought judicial review of the appraisal district's valuation of a railroad right of way on which nine different taxing entities relied in assessing 1982 ad valorem taxes. The trial court dismissed with prejudice the railroad's suit on the ground that the railroad did not pay an amount sufficient to avoid forfeiture of its right to judicial review.
Even if the railroad did not fully comply with the minimum payment statute, the evidence conclusively established that the railroad at least substantially complied. Under the controlling version of the tax code section concerning dismissals, the trial court was required to allow the railroad thirty days in which to fully comply with the minimum payment provision. The court failed to do so and, therefore, erred in dismissing the railroad's lawsuit.
The exclusive judicial remedy for an owner who believes his ad valorem taxes were based upon an appraised property value in excess of the fair market value is to petition for judicial review and reduction of the valuation. See Tex. Tax Code §§ 42.09, 42.21 (Vernon 1982). However, the owner forfeits the right to a final determination in an action concerning 1982 taxes if he fails to pay before February 1, 1983, the greater of either "the tax due on the amount of value of the property involved in the pending action that is not in dispute or the amount of tax paid on the property in the preceding year." Act of June 13, 1979, ch. 841, § 1, 1979 Tex.Gen.Laws 2217, 2310, amended by Act of June 19, 1983, ch. 910, § 1, 1983 Tex.Gen.Laws 5049[1]; see also *719 Tex.Tax Code Ann. § 31.02 (Vernon 1982). For purposes of this opinion, we shall assume that, when more than one taxing authority calculates its taxes on the questioned appraisal, this statute requires the owner to pay to each taxing authority that levied taxes based on the questioned assessment the greater of either the amount of taxes paid to that entity on the property in question the prior year or the amount of the tax owed that entity on the undisputed portion of the valuation. We need not and do not decide that this interpretation is correct because the railroad paid a total amount of taxes to all relevant taxing entities in excess of that required if the statute in question is construed to impose no obligation to pay an appropriate amount to each taxing entity.
With this premise in mind, we turn now to the facts of the instant case. The right of way involved in this controversy traverses the territorial jurisdiction of the Dallas County Appraisal District, which "is responsible for appraising property in the district for ... each taxing unit that imposes ad valorem taxes on property in the district." Tex.Tax Code Ann. § 6.01(b) (Vernon Supp.1987). It accomplished this duty regarding the right of way by rendering a single appraised value for the entire portion of the right of way within its territory and then calculating an equal value per mile of right of way. Each taxing entity then levied taxes based on an amount equal to the appraised value per mile times the number of miles of right of way located within its territorial jurisdiction.
At the hearing on its motion to dismiss for underpayment, the appraisal district introduced documents which, when considered with the railroad's pleading, reflect the following figures concerning the railroad's compliance with the minimum payment provision discussed above when applied independently to each taxing entity which relied on the questioned appraisal:

 A. B. C. D.
 Tax 1982 Tax on Greater Amount
 Taxing Paid Undisputed of Paid on
 Entity in 1981 Value A. or B. 1982 Tax
 ------ ------- ----- -------- --------
1. Dallas County 58,949.78 16,220.98 58,949.78 46,329.28
2. City of Dallas 35,057.44 37,927.20 37,927.20 51,869.74
3. Dallas Independent
 School District 45,244.80 44,658.26 45,244.80 61,480.94
4. City of Grand Prairie 5,128.42 2,545.58 5,128.42 5,000.00
5. Grand Prairie Independent
 School Dis. 0.00 4,357.51 4,357.51 4,507.69
6. City of Mesquite 13.80 8,235.78 8,235.78 4,653.62
7. Mesquite Independent
 School District 13.35 11,373.99 11,373.99 6,402.80
8. City of Sunnyvale 164.88 181.51 181.51 181.51
9. Sunnyvale Independent
 School District 558.05 435.78 558.05 558.05
 Total of Column C171,957.04
 Total of Column D180,983.63

*720 Assuming, as we do in this opinion, that the railroad was required not only to pay an appropriate amount but also pay that amount to the proper taxing authority, the documentary evidence summarized above would indicate from a comparison of each figure in column C, representing the amount required by statute, with the corresponding figure in column D, representing the amount actually paid, that the railroad underpaid with respect to Dallas County, the City of Grand Prairie, the City of Mesquite, and Mesquite Independent School District. However, after counsel for both parties conferred concerning the exhibits, counsel for the appraisal district conceded during the hearing that the payments with respect to Dallas County, the City of Mesquite, and the Mesquite Independent School District were "all right." By virtue of this judicial admission and the uncontroverted nature of the contents of the remaining documents, the record conclusively established that even under the statutory construction urged by the appraisal district, the railroad underpaid only the City of Grand Prairie by $128.42, in an amount approximately two and one-half percent less than that which it should have paid. See Rosse v. Northern Pump Co., 353 S.W.2d 287, 292 (Tex.Civ.App.-Austin 1962, writ ref'd n.r.e.) (stating that formal declarations in open court by a party's attorney are judicial admissions which waive the necessity of evidence).
The railroad contends that this evidence was insufficient, both legally and factually, to justify the trial court's dismissal with prejudice. If the dismissal were governed by the statute in effect at the time this suit was filed, we would be unable to agree. Before May 24, 1985, section 42.08(b) of the tax code required the trial court to dismiss actions for judicial review of appraisals underlying ad valorem taxation on its own motion or that of an opposing party if the property owner had not paid at least the greater of the amount of taxes paid in the preceding year or the tax on that portion of the appraised value which was undisputed. Act of June 13, 1979, ch. 841, § 1, 1979, Tex.Gen.Laws 2217, 2310. Under a plain reading of this provision, the shortfall in payments evidenced here, although minimal, would have been fatal to the railroad's suit. Cf. Hunt County Tax Appraisal District v. Rubbermaid, Inc., 719 S.W.2d 215, 219 (Tex.App. Dallas 1986, writ ref'd n.r.e.) (stating that failure to follow statute would have been fatal to the owner's appeal). However, the 1985 amendment to section 42.08 became effective on May 24 of that year. See Act of May 24, 1985, ch. 195, § 2, 1985 Tex.Gen.Laws 782. That act deleted from subsection (b) the dismissal provision referred to above and added a new subsection (c) which provides:
Upon the motion of a party, the court shall hold a hearing to review and determine compliance with [the minimum payment provision of subsection b]. If the court determines that the property owner has not substantially complied with this section, the court shall dismiss the pending action. If the court determines that the property owner has substantially but not fully complied with this section, the court shall dismiss the pending action unless the property owner fully complies with the court's determination within 30 days....
Act of May 24, 1985, ch. 195, § 1, 1985 Tex.Gen.Laws 782 (currently codified as Tex.Tax Code Ann. § 42.08(c) (Vernon Supp.1987)). It is well-settled that if a procedural statute is amended during pending litigation, all steps occurring after the amendment is effective are governed by the amended statute. See Phil H. Pierce Co. v. Watkins, 114 Tex. 153, 158, 263 S.W. 905, 907 (1924); see also Bardwell v. Anderson, 325 S.W.2d 929, 939 (Tex.Civ. App.-Houston 1959, writ ref'd n.r.e.). Thus, if this statute may be regarded as procedural rather than substantive, it controlled the disposition of the appraisal district's motion which was filed after the 1985 amendments became effective.
That the dismissal provision is procedural rather than substantive is an inescapable conclusion. Substantive law fixes the primary rights and correlative duties of the parties and defines the remedy for the breach of such right or failure to perform *721 such duty. See Brooks v. Texas Employers Insurance Association, 358 S.W.2d 412, 414-15 (Tex.Civ.App.-Houston 1962, writ ref'd n.r.e.). Procedural law, on the other hand, is simply that which governs the process by which substantive rights are made effective. Id. at 414. The provision in question does not alter the substantive right of each property owner to a fair valuation of his property, but rather it simply concerns the manner in which that right may be vindicated. Indeed, the legislature itself considered the statute in question to be one of "procedure" rather than substance. See Tex.Tax Code Ann. § 42.09 (Vernon 1982) (referring to chapter 42 as prescribing "procedures"). Having determined that the legislature amended the dismissal statute before the appraisal district moved to dismiss the railroad's suit, we must decide the evidentiary sufficiency question by reference to the requirements of the amended version of section 42.08.
The record reflects that the trial court rendered its judgment of dismissal on the same day that the hearing on the appraisal district's motion was conducted. By reference to section 42.08(c) of the Tax Code, implicit in that judgment is the determination that the railroad did not substantially comply with the applicable minimum payment provision of the Tax Code. We agree with the railroad that the evidence was legally insufficient to support such a finding. Substantial compliance has been defined as meaning that one has performed the "essential requirements" of a statute. See, e.g., Santos v. Guerra, 570 S.W.2d 437, 440 (Tex.Civ.App.-San Antonio 1978, writ ref'd n.r.e.); Wentworth v. Medillin, 529 S.W.2d 125, 128 (Tex.Civ.App.-San Antonio 1975, no writ). The term has been applied to excuse those deviations from the performance required by statute which do not seriously hinder the legislature's purpose in imposing the requirement. For example, in Santos, the court held that even though the notice of a meeting of the commissioner's court may not have met the precise requirements of the Open Records Act, its purpose was accomplished with respect to the party complaining of the notice because that party actually appeared at and participated in the meeting. 570 S.W.2d at 440.
In requiring the property owner to pay the greater of either the tax paid on the property in the preceding year or the tax on the undisputed value of the property, the legislature evidently sought to accomplish at least two objectives: First, to insure that taxpayers would not use the right of judicial review as a subterfuge for delaying or avoiding the payment of at least some tax and, second, to assure that the activities of the local governments which relied on ad valorem taxes would not be unduly impeded by granting the property owner the right of judicial review. In view of the fact that the railroad paid over $180,000 in taxes based on the questioned appraisal when it was statutorily required to pay only slightly less than $172,000, the railroad cannot be said to have used the right to judicial review as a subterfuge for delay or avoidance of payment. Nor can it reasonably be said that the functions of the government of the City of Grand Prairie would be seriously hampered by a delay in the receipt of 21/2percent of the revenues received in the preceding year from those property owners who challenge their property valuations in court. Thus, we conclude that the evidence shows, as a matter of law, that the railroad's tax payments met the essential objectives of the legislature in imposing the minimum payment provision and, therefore, that it substantially complied with that requirement. The railroad should not be denied its right of judicial review on the basis of such a minimal deviation. Consequently, we reverse the judgment of the trial court and remand this cause to that court with instructions to reinstate railroad's suit for thirty days from the date of reinstatement, during which time the railroad must pay to the City of Grand Prairie an additional $128.42 plus accrued interest and penalty, if any, to preserve its right to a final adjudication of its challenge.
NOTES
[1] The 1983 amendment added a provision that the owner would in no event be required to pay more than the taxes levied for the year in question. However, the legislature expressly provided that the amendment would not affect actions for judicial review which were pending before its effective date. See Act of June 19, 1983, ch. 910, § 2, 1983 Tex.Gen.Laws 5049. Because the present case was filed long before the amendment was even enacted, it is governed by the prior law.