

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00421-CV

RONALD RALPH TREGELLAS
AND WIFE, DONNITA TREGELLAS, APPELLANTS

V.

CARL M. ARCHER TRUST NO. THREE
AND MARY FRANCES G. ARCHER TRUST NO. THREE,
MARY ARCHER DIXON AND CARLA ARCHER JOHNSON, TRUSTEES
APPELLEES

On Appeal from the 84th District Court
Hansford County, Texas
Trial Court No. CVO-05095, Honorable William D. Smith, Presiding

August 26, 2016

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellees Mary Archer Dixon and Carla Archer Johnson as trustees of the Carl

M. Archer Trust No. Three and the Mary Frances G. Archer Trust No. Three[1] sued

---

[1] For simplicity, we will refer to the trusts as "the Archer trusts," and appellees as "the Archer trustees," or "the trustees." Dixon and Johnson are successor trustees of the Archer trusts.

appellants Ronald Ralph Tregellas and his wife Donnita Tregellas (hereafter, "Tregellas"). The trustees sought specific performance of a right of first refusal of a mineral interest. After a bench trial the court rendered judgment in favor of the trustees. We will reverse and render in part and otherwise affirm the judgment of the trial court.

## Background

By a warranty deed of June 16, 2003, members of the Cook family[2] conveyed the surface only of the west half of Section 85, Block 4-T, T&NO Ry. Co. Survey in Hansford County, Texas, to the trustees of the Archer trusts. The Cooks also owned the minerals under that half section. As part of the same transaction but by a separate document entitled "Right of First Refusal" (the "ROFR"), the Cooks granted the trustees a right of first refusal to purchase the minerals. The ROFR stated in part:

> [The Cooks] . . . have sold and granted, and by these presence (sic) do hereby SELL and GRANT unto [the Archer trustees] the Right of First Refusal to purchase the following land described as follows, to-wit:
> . . .
> Tract 4:    All of the oil, gas, and other minerals in, on or under W/2 of Section 85, Block 4-T, T&NO Ry. Co. Survey, Ochiltree County, Texas.
> . . .
> This right of first refusal shall be construed to mean that in the event that [the Cooks], and/or their successors and/or assigns, desire to sell any or all of the above described property, [the trustees], their heirs and assigns, shall have the right to purchase the property, at the same price and on the same terms and conditions as offered by any other bona fide buyer.

---

[2] Grantors of the interest conveyed were Robert Lynn Cook individually and as co-trustee of the A.F. Cook Children's Trust, Sharon Kay Cook, Sharon Sue Farber, individually and as co-trustee of the A.F. Cook Children's Trust, Rodney Farber, Brenda Jean Cook Smith, individually and as co-trustee of the A.F. Cook Children's Trust, Ed Smith, Lacie Anne Baker Tidwell, and Trent Tidwell.

> [The trustees] shall have sixty (60) days after receipt of said offer to either accept or reject said offer. In the event [the trustees do] not elect to accept said offer, and the property is purchased by the <u>bona fide</u> buyer, set forth above, at the offered price, then this agreement shall be null and void and of no further force and effect, <u>only</u> as to the property so purchased . . . .

> This Right of First Refusal shall be subordinate to and [the Cooks] or their successors or assigns . . . shall have the right to execute, to mortgage or otherwise encumber the above described land . . . . (underlining in original)

Later in 2003 the Archer trustees' attorney discovered that the property description of Tract 4 in the ROFR, while otherwise correct, erroneously listed the county of its location as Ochiltree County rather than Hansford County.[3] He prepared a correction right of first refusal and sent it to the Cook grantors. Two of the grantors, Lacie Tidwell and Trent Tidwell, signed the correction instrument in February 2004 and returned it for filing. None of the other grantors responded. The instrument signed by the Tidwells was recorded in Hansford County in September 2004.

By mineral deed executed on March 28, 2007, and recorded on March 30, 2007, Sharon Sue Farber and Rodney Farber sold their undivided interest of the minerals underlying the west half of Section 85 to Tregellas. It is undisputed the Farbers did not notify the Archer trustees of their intended sale or give them opportunity to purchase the mineral interest under the terms of the ROFR.

---

[3] The ROFR described five numbered tracts as to which the right of first refusal was granted. All the tracts but Tract 4 described land in Ochiltree County. As noted, the land described as Tract 4 actually lies in Hansford County.

On May 4, 2011, a prospective oil and gas lessee reported the Farber sale to the Archer trustees. The next day the trustees filed suit against the Farbers,[4] Tregellas, and others. They stated in their original petition that they "desire to exercise their right to purchase the mineral interest" the Farbers conveyed to Tregellas. They sought specific performance requiring Tregellas to convey the mineral interest to the trustees on their payment of the price Tregellas paid the Farbers.

Brenda Cook Smith died in 2008. Tregellas negotiated with her husband Ed Smith and son Dalton Smith to buy Brenda Smith's undivided mineral interest in the property for $20,000. The Archer trustees again were not notified of the proposed sale. After the trustees filed suit Tregellas, relying on the ROFR's subordination of the first-refusal right to the grantors' right to mortgage the property, proposed to the Smiths that they structure their transaction as a loan secured by a deed of trust. The Smiths agreed, received the $20,000 and signed a promissory note to Tregellas in that amount, bearing interest at ten percent and secured by a deed of trust lien on the mineral interest. The note was payable in ninety days but the Smiths made no attempt to pay it. In August 2012, Tregellas purchased the Smith mineral interest at a nonjudicial foreclosure sale. In November, the Archer trustees learned that Tregellas had acquired the Smith interest. In an amended petition they alleged Tregellas obtained the Smith minerals by subterfuge, artifice, or device used to make a voluntary sale appear involuntary and remove it from the right of first refusal.

The trial court's September 2014 judgment granted specific performance for the Archer trustees as to both the Farber interest and the Smith interest.

---

[4] The Farbers were later nonsuited.

4

Analysis

The Statute of Frauds

We initially address Tregellas's third issue, which asserts the legal description of the property in the ROFR violates the statute of frauds and is therefore ineffective because it misidentified Section 85's location as Ochiltree County rather than Hansford County. Among Tregellas's arguments is that the correction instrument signed by the Tidwells and recorded in Hansford County on September 14, 2004, was ineffective because it did not comply with the requirements of Texas Property Code section 5.031. TEX. PROP. CODE ANN. § 5.031 (West 2014). The trial court found the correction instrument substantially complied with the pertinent statutory section, and effectively corrected the erroneous county name in the ROFR.

Section 5.031 makes a correction instrument recorded before September 1, 2011, that substantially complies with Property Code section 5.028 or 5.029 and that purports to correct a recorded original instrument of conveyance effective to the same extent as provided in section 5.030 unless a court "renders a final judgment determining that the correction instrument does not substantially comply" with section 5.028 or 5.029. TEX. PROP. CODE ANN. § 5.031. The trial court's judgment makes no determination that the 2004 correction instrument lacks substantial compliance with section 5.028 or 5.029, and we agree with the Archer trustees that sufficient evidence supports the court's finding of substantial compliance.

The pertinent statutory section here is section 5.028, concerning instruments effecting nonmaterial corrections. Section 5.028 allows a person having personal

5

knowledge of facts relevant to the correction of a recorded original instrument of conveyance to prepare or execute a correction instrument to make a nonmaterial change that results from a clerical error. The section's list of nonmaterial changes includes the correction of an incorrect county name. TEX. PROP. CODE ANN. § 5.028(a)(1) (West 2014). It is undisputed the incorrect reference to Ochiltree County in the original ROFR was a typographical error. The 2004 correction instrument was effective if it substantially complied with the requirements of section 5.028.

Substantial compliance with a statute requires that one perform its "essential requirements." *Mo. Pac. R.R. Co. v. Dallas Cnty. Appraisal Dist.*, 732 S.W.2d 717, 721 (Tex. App.—Dallas 1987, no writ). "The term has been applied to excuse those deviations from the performance required by statute which do not seriously hinder the legislature's purpose in imposing the requirement." *Id.*

Tregellas argues the correction instrument fails for three reasons: it does not disclose the basis for the Tidwells' personal knowledge of the facts relevant to the correction; no signed copy of the correction instrument was sent to the Farbers or the Smiths; and it was recorded only in Hansford County.

The correction instrument repeated all the ROFR's language describing the grant and terms of the right of first refusal, so the names of all the ROFR's grantors, including the Tidwells, are stated in the correction instrument. It recited the volume and page of the ROFR's recording in Ochiltree and Hansford counties. It clearly set out the original incorrect description of Tract 4 from the original ROFR, stated the description was an error or mistake, and set out the correct description for that tract, showing it to be in

6

Hansford County. It provided for execution in counterparts, stating that it bound any party executing a counterpart despite the failure of other grantors to execute the instrument.

As to the absence of a statement of the basis for the Tidwells' knowledge, the trustees argue that the instrument's identification of the Tidwells as among the signers of the original ROFR permits a reasonable inference of their knowledge of the county in which their property was located. We agree the correction instrument reflects substantial, if not literal, compliance with the personal knowledge requirement. *See Santos v. Guerra,* 570 S.W.2d 437, 440 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.) ("Substantial compliance means compliance with the essential requirements, whether of a contract or of a statute" (internal quotation marks omitted)).

The same is true of the trustees' compliance with the notice requirement. The Archer trustees' counsel testified he mailed a counterpart of the correction instrument to each of the grantors by first class mail, seeking their execution of the instrument. Tregellas argues the copies were not signed, and the trustees respond that section 5.028(d)(2) does not require that the notice contain signed copies of the correction. The trustees are correct. At the least, the trustees accomplished substantial compliance with the notice requirement.

We also agree with the trustees that they substantially complied with the recording requirements set out in section 5.028. Tregellas complains the correction instrument was recorded only in Hansford County while literal compliance with section 5.028 requires that such an instrument be recorded in all counties in which the

7

instrument being corrected is recorded. TEX. PROP. CODE ANN. § 5.028(d)(1). But with correction instruments filed before September 1, 2011, we deal with substantial, not literal, compliance. The necessary correction dealt with land located only in Hansford County, and from the recording information contained in the correction instrument any examiner would have ready reference to the original ROFR's location in the Ochiltree County records if such were needed.

The trustees met the essential requirements of section 5.028 in their preparation and recording of the 2004 correction instrument. To the extent to which the trustees deviated from those requirements, we find the deviations do not seriously hinder the legislature's purpose.[5] Tregellas's third issue is overruled.

The Statute of Limitations – Farber sale

Tregellas's first issue contends the trial court erred by failing to find the trustees' claim for specific performance of its right to purchase the Farber interest was barred by limitations.

---

[5] Based on trial testimony that Block 4-T, T&NO Survey straddles the Hansford-Ochiltree County line but that no part of Section 85 of that block and survey is located in Ochiltree County, and that a party familiar with the locality would have identified the described land as being located in Hansford County, the trial court found the original description in the ROFR satisfies the statute of frauds. *See Pick v. Bartel,* 659 S.W.2d 636, 637 (Tex. 1983) (stating standard). Because we conclude the description was effectively corrected by the 2004 correction instrument, we do not consider the effect of the erroneous county name on the ROFR's compliance with the statute of frauds.

*Right of First Refusal*

A right of first refusal, also known as a preemptive right, commonly[6] requires the property's owner to first offer the property to the holder of the right at the agreed-upon price and terms in the event the owner decides to sell the property. *Abraham Inv. Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518, 527 (Tex. App.—Amarillo 1998, pet. denied) (op. on reh'g); *see also Comeaux v. Suderman,* 93 S.W.3d 215, 219 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Riley v. Campeau Homes (Tex.), Inc.,* 808 S.W.2d 184, 187 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd); *West Texas Transmission,* 907 F.2d at 1561. When the grantor decides to sell the property, it is bound to offer the holder of the right of first refusal the opportunity to buy the property on the terms offered by a bona fide purchaser. *Suderman,* 93 S.W.3d at 219; *Riley*, 808 S.W.2d at 187; *see* 3-11 Joseph M. Perillo, CORBIN ON CONTRACTS § 11.4 (Matthew Bender, Lexis 2016) (stating among at least four distinct legal rights included in the right of first refusal is the right to receive notice of a third-party offer). When a grantor sells property in breach of a right of first refusal there is created in the holder an enforceable option to acquire the property according to the terms of the sale. *A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 673 (Tex. App.—Austin 2003, pet. denied). Like all contractual rights supported by consideration, a right of first refusal is enforceable. *Henderson v. Nitschke,* 470 S.W.2d 410, 414 (Tex. Civ. App.—Eastland 1971, writ ref'd n.r.e.). Specifically, "[a] sale or transfer of property burdened by a right of first refusal without making an offer to the holder of the right is a breach of contract for which the remedy of specific performance

---

[6] As the Fifth Circuit noted in *West Texas Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1562 and n.15 (5th Cir. 1990), the details of the right depend on the terms of the parties' contract. The general descriptions of the terms of rights of first refusal we have cited are consistent with the ROFR the Cooks granted the Archer trustees.

is available." *Riley,* 808 S.W.2d at 188 (citing *Martin v. Lott,* 482 S.W.2d 917, 920 (Tex. Civ. App.—Dallas 1972, no writ)).

A suit for specific performance of a contract for the conveyance of real property must be brought no later than four years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(1) (West 2002); *Gilbreath v. Steed,* No. 12-11-00251-CV, 2013 Tex. App. LEXIS 5947, at *11 (Tex. App.—Tyler May 15, 2013, no pet.) (mem. op. on mot. for reh'g) ("ripened right of first refusal is governed by" the four-year limitations period of Civil Practice and Remedies Code section 16.004(a)(1)).

The Farbers granted the trustees a right of first refusal to purchase their interest in the mineral estate in June 2003; the Farbers conveyed the mineral interest to Tregellas, and their deed was filed for record in Hansford County, in March 2007. The Farbers did not provide the trustees notice of their sale. The trustees learned of the Farber-Tregellas sale on May 4, 2011, and filed suit the following day, May 5.

We do not know when the Farbers first manifested an intention to sell the minerals, but no later than March 28, 2007, when they closed their sale to Tregellas, the trustees' bargained-for right of first refusal had been dishonored and the agreement breached. *Seureau v. ExxonMobil Corp.,* 274 S.W.3d 206, 227 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (a contract is breached when a party fails or refuses to perform an obligation of the contract). An action for breach of the right of first refusal agreement accrued at that point. *See S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex. 1996) (explaining generally "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting

10

damages have not yet occurred"); *Childs v. Haussecker,* 974 S.W.2d 31, 41 n.7 (Tex. 1998); *see also Seureau*, 274 S.W.3d at 226 ("Stated differently, a cause of action generally accrues when facts come into existence which authorize a claimant to seek a judicial remedy").

The trustees see, however, a distinction in the law regarding accrual of actions seeking specific performance of a first-refusal right. Their brief explains that under the law applicable to rights of first refusal, until the right's holder is notified of a contemplated or actual sale, the right is "essentially a dormant option." When the holder is notified of the terms of a contemplated or actual sale, the right "ripens and matures from a dormant option into an enforceable and irrevocable option." When the right ripens into an option, the holder may exercise the option or allow it to expire. If, the trustees point out, "the holder elects to exercise its option, the result is that a binding, enforceable contract of sale is created." And, they conclude, "[b]ecause a binding, enforceable contract is an absolute prerequisite to an action for specific performance, the action cannot accrue until a binding contract exists. Thus, an action for specific performance of a contract created by the exercise of an option, cannot accrue until the option is exercised."

The trustees' theory has a certain logic, based on the caselaw regarding the mechanics of exercise of a right of first refusal, but the cases they cite have to do with those mechanics, not with limitations.[7] The trustees do not cite us to authority applying

_____

[7] For the propositions, the trustees cite *A.G.E., Inc.,* 105 S.W.3d at 673; *FWT, Inc. v. Haskin Wallace Mason Prop. Mgmt., L.L.P.,* 301 S.W.3d 787, 794 (Tex. App.— Fort Worth 2009, pet. denied) (op. on reh'g); *Maxwell v. Lake,* 674 S.W.2d 795, 798

11

their theory to accrual of a cause of action for enforcement of a first-refusal right, and we cannot agree with it.

Under the trustees' theory the time of accrual of a cause of action for breach of the contract would differ, depending on the remedy sought.[8]  The theory thus runs counter to Texas law regarding accrual of causes of action.  *See Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006) (summarizing Texas law on accrual of causes of action).

And, under the trustees' theory accrual of their cause of action turned on when they had notice of a sale in derogation of their right of first refusal.  Under such a theory, the cause of action might not accrue for many years, perhaps decades, after the sale in breach of the contract. The inherent uncertainty of this standard is inconsistent with the purpose of the statutes of limitation.  *See S.V.,* 933 S.W.2d at 3 (quoting *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex. 1990) ("The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims")).

As noted, at the latest by March 28, 2007, the trustees had sustained an injury for which they could have filed suit.  *Riley*, 808 S.W.2d at 188.  By that point, then, the

_____

(Tex. App.—Dallas 1984, no writ); and *Rogers v. Winters*, 341 S.W.2d 417, 419 (Tex. 1960).

[8] Although a litigant seeking it must meet pleading and proof requirements, specific performance is a remedy for a breach of contract, not a separate cause of action.  *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008) (referring to "equitable remedy of specific performance"); *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied) ("Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate") (citing *Stafford v. Southern Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied)); *Scott v. Sebree*, 986 S.W.2d 364, 369-70 (Tex. App.—Austin 1999, pet. denied).

limitations period had commenced. Unless the accrual date was tolled or postponed, the trustees' suit filed in May 2011 for the Farber interest was barred by limitations.

The trustees further argue for the application of the discovery rule to delay the accrual date of their cause of action. The trial court found the trustees did not know, nor through the exercise of reasonable diligence should they have known, of the Farbers' sale prior to May 4, 2011. Specifically, the trustees contend that while the Farber-Tregellas deed was a matter of public record, they had no duty to examine the public record. Hence, they continue, their injury was inherently undiscoverable and objectively verifiable.

The date that an action accrues is a question of law. *Seureau*, 274 S.W.3d at 226 (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)). Under the discovery rule, accrual of a cause of action is deferred until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the injury-causing act. *Cosgrove v. Cade,* 468 S.W.3d 32, 36 (Tex. 2015). Availability of the discovery rule is limited to those instances where "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex. 1996)). The focus in discovery-rule cases is not on causes of action but on categorical types of injury. *Id.* (citing *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 314 (Tex. 2006) (per curiam)). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown v. Horwood,* 58 S.W.3d 732, 734-735 (Tex. 2001) (citing *S.V.,* 933 S.W.2d at 7). Evaluating the applicability of the discovery rule, we thus determine whether the trustees' injury is "the

type of injury that generally is discoverable by the exercise of reasonable diligence." *Wagner & Brown,* 58 S.W.3d at 735 (quoting *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex. 1998)).  The Texas Supreme Court has noted a common thread in cases finding inherently undiscoverable injuries, which it described as, "when the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff . . . ."  *S.V.,* 933 S.W.2d at 7.  The court also noted that an injury's discoverability does not depend solely on its nature; the circumstances in which it occurred and the plaintiff's diligence also are considered.  *Id.*

Our state's supreme court also has held that the discovery rule's application to breach of contract claims should be "rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims."  *Via Net,* 211 S.W.3d at 315.  Its holding was supported in part by its observations that contracting parties generally are not fiduciaries, and that due diligence thus requires that each protect its own interests.  *Id.* at 314; *see also Seureau,* 274 S.W.3d at 229 (citing *Via Net* for same propositions); *Harrison v. Bass Enters. Prod. Co.,* 888 S.W.2d 532, 538 (Tex. App.—Corpus Christi 1994, no writ) (nonparticipating royalty interest owner is a party to a contract and is charged with the duty of protecting his own interests).

The Farbers' wrong was in conveying their mineral interest without complying with their obligations under the ROFR; the trustees' injury arose from the same.  As is true in this case, because of the requirements of the statute of frauds and the recording statutes, a conveyance of real property in violation of a right of first refusal is very likely to be reflected in a publicly-recorded instrument.  *See, e.g.,* TEX. PROP. CODE ANN. §

14

13.001 (West 2014); TEX. BUS. & COM. CODE ANN. 26.01 (West 2015).  Once properly recorded in the proper county, the instrument is subject to inspection by the public, and notice to all persons of its existence.  TEX. PROP. CODE ANN. § 13.002 (West 2014).[9] We thus conclude the trustees' injury is of the type that generally is discoverable by the exercise of reasonable diligence.  *See Wagner & Brown,* 58 S.W.3d at 735; *see also Seureau,* 274 S.W.3d at 229 ("The exercise of due diligence may require that a party ask its contract partner for information needed to verify the other's contractual performance. . . .  One who . . . fails to ask for such information has not used due diligence" (citations omitted)).  Accordingly, consideration of whether the Archer trustees' injury is objectively verifiable is unnecessary.  The discovery rule has no application in this case.[10]  Tregellas's first issue is sustained.

Foreclosure of Deed of Trust Lien – Smith sale

The trial court found that the Smith-Tregellas loan transaction "was a subterfuge or device" to sell the Smiths' interest so as to defeat the trustees' right of first refusal.  It further found the Smiths had no intention of repaying the loan at the time of the transaction, and concluded the foreclosure and subsequent deed to Tregellas was a voluntary sale of the Smiths' mineral interest subject to the trustees' right. Tregellas's

---

[9] One of the Archer trustees agreed on cross-examination that the Archers had "employees who regularly check various county clerk's records."

[10] Arguing against application of the discovery rule, Tregellas also contends the trustees are charged with constructive knowledge of the recorded Farber-Tregellas mineral deed by virtue of Property Code section 13.002. TEX. PROP. CODE ANN. § 13.002 (properly recorded instrument is notice to all persons of its existence); *see Cosgrove*, 468 S.W.3d at 38 (discussing application of section 13.002).  Because of our conclusion the trustees' injury is not of a type that is inherently undiscoverable, we need not discuss constructive notice.

second issue contends the evidence was insufficient to support the trial court's finding that the transaction was a voluntary sale subject to the right of first refusal.

In their arguments on Tregellas's second issue, both parties rely on the Texas Supreme Court's opinion in *Draper v. Gochman,* 400 S.W.2d 545 (Tex. 1966). The court there held that the holder of a right of first refusal was not entitled to exercise the right at the time of a foreclosure sale of the land under a deed of trust. Under the language of the governing instrument, the holder had the right to purchase the land if its owner desired to sell. *Id.* at 545. Giving the words "desires to sell" their ordinary meaning, the court agreed with the position of the foreclosure-purchasers that the phrase does not include an involuntary sale on the foreclosure of a mortgage. Instead, the court held, the phrase "as here used was intended to cover a voluntary act on the part of [the owner], covering either an offer on his part to sell, or the willingness on his part to accept an offer from a third person." It found no evidence the owner had expressed such an offer or willingness to sell. *Id.*

The *Draper* opinion also contains this paragraph:

Gochman [the right of first refusal holder] does not contend that at the time Baxter [the owner] executed the deed of trust he had a "desire to sell" which would then ripen Gochman's first right of refusal. To so hold would virtually prevent the mortgaging of property on which there was a right of first refusal if the grantor "desires to sell." It is generally contemplated by both the lender and the borrower that the loan will be repaid. There is no evidence here that the loan transaction with its attendant mortgage or deed of trust was intended as a subterfuge or device to sell the property so as to defeat Gochman's first right of refusal in the event Baxter desired to sell.

400 S.W.2d at 547.

16

The Archer trustees point to the trial court's "subterfuge or device" finding as supporting the trial court's further finding the foreclosure sale to Tregellas was a voluntary sale that triggered the trustees' exercise of their right of first refusal. Tregellas argues this case is distinguished from *Draper* because the right of first refusal the Cooks signed contained language expressly subordinating the right of first refusal to their right to execute mortgages.

We agree with Tregellas that the presence of the mortgage subordination language in the ROFR seems to distinguish this case from *Draper*. We note also that while the *Draper* opinion suggests that its disposition of the case might have been different if the deed of trust had been intended as a subterfuge to sell the property free of a right of first refusal, the opinion does not say so explicitly. The court merely noted that the record did not contain evidence of a subterfuge. 400 S.W.2d at 547. We further note that our state's law does not imply in every contract a duty to perform in good faith. *Devine v. Devine,* No. 07-15-00126-CV, 2016 Tex. App. LEXIS 2527, at *6 (Tex. App.—Amarillo Mar. 9, 2016, pet. filed) (citing *English v. Fischer,* 660 S.W.2d 521, 522 (Tex. 1983)). For those reasons, it is unclear to us whether the court's "subterfuge or device" finding would support its imposition of specific performance.

We need not resolve that issue, however, because events preceding the restructuring of the Smith-Tregellas transaction support the court's judgment. The trial court found that the Smiths did not disclose to the Archer trustees that they were willing to sell their mineral interest. The facts supporting the finding are undisputed. Ed Smith testified to the following:

17

Q. Under your wife's will, did you and Dalton inherit some mineral interests in the will?

A. Yes.

Q. At some point in time, did Rusty Tregellas get in touch with you about buying those minerals?

A. Yes, numerous times.

Q. Did you finally agree to sell them to him?

A. Yes.

Q. Did you arrive at a price with him?

A. Yes.

Q. And what was the price, do you know?

A. $20,000.

Q. Did he pay you 20,000?

A. Yes.

Q. Was the transaction different than the way you thought it was going to be?

A. He contacted me several times, and I told him I wasn't interested, but I wasn't getting any money off of it, so I finally agreed, and he said he would draw up the papers. Then he contacted me again and said there was a problem about something, and he wanted to draw it up as going ahead and giving me the money, but it would be a lien . . . .

The right to receive notice of a third-party offer is recognized as one of the "distinct legal rights which are included in the concept *Right of First Refusal*." *See* 3-11 CORBIN ON CONTRACTS § 11.4 (emphasis in original). As Corbin further explains:

**The right to receive notice of a third-party offer.** This right contemplates that the grantor of the right will communicate to the holder the offer that the grantor is contemplating accepting. The communication of the third-party offer is what the grantor promised to the holder of the right of first refusal. Of course, where the grantor is trying to evade a duty

under the right of first refusal, there may be no such communication. In these circumstances a court might look to other evidence to find a willingness of the grantor to contract sufficient to justify specific enforcement of the promise to offer the land on the acceptable terms, thereby implying an offer ripening the holder's rights into a current power of acceptance.

*Id.*

Addressing a comparable circumstance involving asserted breaches of a bailment agreement, the Texas Supreme Court in *Barker*, 213 S.W.3d at 311, noted that a cause of action for breach of the agreement can accrue when the bailee breaches by refusing to comply with a rightful demand for return or disposition of the returned property, or when the bailee takes action clearly inconsistent with the bailor's contractual rights. The court continued, "But, the rule that a cause of action may accrue upon such types of breach does not preclude accrual of a cause of action at an earlier time if the bailee at an earlier time breaches the agreement. The rights and obligations of the parties to a bailment agreement must be analyzed in light of the particular facts and the claims asserted." *Id.*

We find the concept the court articulated there in *Barker* useful here. The court's unchallenged finding of the Smiths' willingness to sell their mineral interests, clearly described in Ed Smith's testimony, and its unchallenged finding the Smiths did not disclose that willingness to sell on the terms he reached with Tregellas, demonstrate a breach of the ROFR supporting the remedy of specific performance. Affirmance of the court's judgment ordering specific performance as to the Smiths' interest thus does not require us to determine whether the Smiths further breached the agreement by engaging in the mortgage transaction leading to the foreclosure sale.

The opinion in *Holland v. Fleming*, 728 S.W.2d 820 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) supports our view of the court's findings. In *Holland,* the owner of eight acres of land subject to a right of first refusal entered into an earnest money contract with a third party to sell the ten-acre tract that included the eight acres. Two days later, the owner and the third party canceled their agreement. When the holders of the right of first refusal shortly learned of the execution of the contract, they notified the owner of their intent to exercise their right. After the owner rejected their claim, the holders brought suit and the trial court ordered the owner to consummate the sale of eight of the ten acres to the holders, at a proportionate sale price. *Id.* at 821. The appellate court reversed, finding that the owner had a reasonable time to notify the holders of the terms of its proposed sale, and when the sale was canceled after only two days, its obligation to give notification ended. The court said, "There was no longer a pending sale, and the preemptive right of purchase never matured into an enforceable option." *Id.* at 823.

Here, there is no evidence the Smiths wavered in their willingness to sell their mineral interest to Tregellas for $20,000. The court's findings and the evidence supporting them leave no doubt that the Smiths were willing and ready, and had in fact agreed, to sell their mineral interests to Tregellas for that amount. Those facts obligated them to notify the Archer trustees of Tregellas's offer. The Smiths breached that obligation, permitting the trial court to imply the ripening of the trustees' right into an option at that point. 3-11 CORBIN ON CONTRACTS § 11.4; *Riley,* 808 S.W.2d at 188 ("A right of first refusal ripens into an option when the owner elects to sell. . . . When an owner is required to notify the holder of a right of first refusal of the owner[']s election to

sell, the right matures into an enforceable option when the owner gives the required notice" (citations and internal quotation marks omitted)).  This result obtains without regard to Tregellas's later suggestion that the transaction be restructured into a short-term loan and lien, regardless of the effectiveness of that suggestion under the ROFR.

Tregellas's second issue is overruled.

## Conclusion

We reverse and render judgment that the Archer trustees take nothing by their claim for specific performance of the sale of the Farber interest.  Otherwise, we affirm the judgment of the trial court.

James T. Campbell<br>
Justice